J. T. FARGASON COMPANY *v.* DUDLEY.

Opinion delivered May 2, 1927.

1. TRIAL—TRANSFER TO EQUITY.—In an action for a balance due on an account refusal to transfer the case to chancery was not error where the amount was not in dispute, but the issue was whether the plaintiff had guaranteed a certain price.

2. PRINCIPAL AND AGENT—AUTHORITY OF AGENT.—A cotton factor, as a matter of law, *held* not to have guaranteed the owner of cotton a certain price where the owner relied on representations of the factor's soliciting agent, since such representations would not be within the apparent scope of the agent's authority.

3. PRINCIPAL AND AGENT—AUTHORITY OF AGENT.—One dealing with an agent without ascertaining his authority does so at his peril.

Appeal from Poinsett Circuit Court; *G. E. Keck,* Judge; reversed.

*Horace Sloan,* for appellant.

*C. T. Carpenter,* for appellee.

WOOD, J.  This action was begun in the chancery court of Poinsett County by J. T. Fargason & Company, a corporation at Memphis, Tennessee, against W. A. Dudley and Robert Dudley, individually, and as a copartnership under the name of W. A. Dudley & Brother. It was alleged that, in March, 1920, during the existence of the partnership, it shipped to the plaintiff, cotton factors at Memphis, Tennessee, twenty-one bales of cotton

to be sold by the plaintiff for the defendant; that the partnership was afterwards dissolved and the business continued in the name of W. A. Dudley.   Plaintiff alleged that it advanced to the defendant on such cotton the sum of $1,700 and that certain charges had accrued against the cotton in the way of interest, freight, storage and insurance, amounting in the aggregate to $376.70.   It was alleged that the plaintiff sold the cotton during 1921 and received from the sale the sum of $595.41, which amount deducted from the amount due the plaintiff by defendant left a balance of $1,481.29, for which the plaintiff prayed judgment.

The cause, on motion of the defendant, was transferred to the circuit court, where the defendant, Robert Dudley, answered, disclaiming any interest in the partnership at the time of the alleged transaction between the plaintiff and W. A. Dudley, defendant. W. A. Dudley answered, denying all the allegations of the complaint except that the plaintiff was a corporation. He made his answer a cross-complaint, and alleged that he shipped the cotton to the plaintiff under a strict guaranty that the same should be sold by the plaintiff for at least 26 cts. per pound; that he was influenced by this guaranty to ship the cotton to the plaintiff.   He alleged that the twenty-one bales of cotton shipped to the plaintiff contained 8,930 pounds; that, under the terms of the contract by which the cotton was shipped, the plaintiff was indebted to the defendant in the sum of $621.80, being the difference between the amount for which the cotton was actually sold and the guaranteed price. Defendant prayed that plaintiff be required to account to him for the surplus sum which would have been obtained by selling the cotton at the guaranteed price, amounting to $621.80, for which the defendant prayed judgment.

The plaintiff answered the cross-complaint of W. A. Dudley, denying its allegations.   A motion was made by the plaintiff to remand the cause to the chancery court, which was granted.   A motion was then made by the defendant to retransfer the cause to the circuit court,

which was granted, to which last motion the plaintiff duly excepted.

The testimony of plaintiff's bookkeeper during the transaction was to the effect that Dudley Brothers shipped to the plaintiff, in 1920, twenty-one bales of cotton. The plaintiff advanced to W. A. Dudley on this cotton $1,700, and the interest on this, together with the freight, storage and insurance charges, amounted to $2,076.70. The plaintiff sold the defendant's cotton during the year 1921 for the sum of $595.41, leaving a balance due the plaintiff in the sum of $1,481.29. The cotton was shipped to the plaintiff by the defendants to be sold by the plaintiff as a cotton factor; the plaintiff was not buying the cotton, but merely acting as a commission merchant or factor. The witness explained in detail the method of cotton factors in handling cotton, which we deem unnecessary to set forth.

W. A. Dudley testified that one C. C. Deyerle came to his place of business at Truman, Arkansas, in 1920, representing the J. T. Fargason Company. Witness shipped cotton on his solicitation to that company. Witness told Deyerle that he had some cotton that he wished to dispose of, and asked Deyerle what cotton of that grade would bring, and Deyerle stated from thirty cents up. Witness told Deyerle that he could get 26 cents for it, and Deyerle replied, "You ship that cotton to J. T. Fargason & Company and I guarantee that you get 26 cents or better for it." The plaintiff moved to exclude this testimony of Deyerle on the ground that there had been no showing that Deyerle had any authority to solicit cotton for the Fargason Company on which to make any price, or to guarantee any price. The court overruled the motion. The witness identified and introduced in evidence the correspondence between himself and the plaintiff. In a letter of defendant to the plaintiff dated February 24, 1920, the defendant stated, "as per conversation with your Mr. Deyerle, we are shipping you today eight bales of cotton as per the attached bill of lading, and we are drawing on the Bank of Truman

for $600. Please sell this cotton for our account and render statement." Plaintiff answered this letter on February 27 in which it thanked the defendant for the shipment and stated that the defendant's draft would be paid on presentation, and that, when the cotton arrived, it would place the samples on plaintiff's tables and sell the cotton as soon as possible. Witness further testified that Deyerle had solicited shipments of cotton from witness for the Fargason Company numbers of times before, and again told witness that, if the witness would ship this cotton to the plaintiff, he would guarantee that plaintiff would get 26 cents for the lower grade and more for the other. The plaintiff renewed its objection to the testimony, which objection the court overruled. Witness further testified that he was in Memphis in July, 1920, saw the plaintiff, and informed it that witness did not ship its cotton over there to keep—that he wanted it sold. Witness wrote plaintiff letters to that effect. He did not write them objecting to their holding it, but simply told the plaintiff that he shipped it to sell and not to hold. Later, in September, plaintiff sent witness a statement for storage and freight, which witness paid in October, 1920. Witness did not raise any question or say anything about the fact that the cotton was not sold, because witness was relying on his agreement with Deyerle. Witness received several reports of sales, beginning March 24, 1920, showing that plaintiff had sold his cotton at six cents per pound; after receiving several reports, witness wrote plaintiff a letter on June 9, 1921, in which he stated that the sales were not satisfactory; that he had advised the plaintiff at the time of shipment of his cotton to sell the same, and that, if plaintiff had sold when notified to do so, the cotton would have brought a much greater price, and he could not accept the sales as reported. In reply to the above the plaintiff wrote to the defendant stating, in effect, that it was impossible for it to sell the cotton at the time defendant wrote for it to sell, and that it had not been able to move it until the present time. It stated that defendant's letter had reached plaintiff in

time to stop the sale of one bale, and that the part of the cotton of defendant which plaintiff had sold had been delivered and placed to defendant's credit. The letter concluded as follows: "If you will send us your check to pay your account, we will hold the cotton as long as you say. We cannot hold cotton indefinitely, and especially so when there is no prospect of immediate advance in the market. Please write us what you want to do and what you want us to do. We are always glad to cooperate with you to the best interest of all concerned."

The witness further testified that he did not offer to pay the account and take the cotton because he did not have the money. The witness' testimony further shows that his brother had withdrawn from the partnership and had no interest in the business at the time this cotton was shipped and sold. Witness stated that the balance sued for by the plaintiff had not been paid by the witness, because witness did not owe the plaintiff.

G. E. Deyerle testified for the plaintiff, in rebuttal, to the effect that he was the son-in-law of D. B. Fargason, who was the vice-president and secretary of the plaintiff. Witness was in the employ, at one time, of the plaintiff. His duties were to solicit cotton shipments and attend to the outside business. Witness had had ten or twelve years' experience in the business of cotton factor, and knew the customs and usages of the business. Over the objection of the defendant, the witness testified that cotton solicitors for cotton factors in this territory ordinarily do not have authority, and it is not within the scope of their duties, to guarantee the price for which cotton is to be sold by the factors which such soliciting agents represented. The witness further testified that he did not state to the defendant that he would guarantee that his cotton would bring 26 cents or better. He had no such conversation with the defendant. Witness never attempted to guarantee the price of cotton to anybody. He would be very foolish to do such a thing. A conversation he had with the defendant was in the usual routine of the trade. Defendant agreed to ship the cotton to the

plaintiff, and there was no special agreement about it one way or the other. Witness did have the authority to tell the defendant how much the plaintiff would advance on his cotton, but that was as far as witness had any authority and as far as witness made any trade with him at that time, or tried to make any trade. Witness had no official position with the firm of plaintiff; he was just an employee.

D. B. Fargason testified that he was vice president and one of the managing officers of the plaintiff in 1920. Deyerle was employed by plaintiff to solicit shipments of cotton and to visit different places where the plaintiff had advanced money to see how the farmers were getting along with their crops and to make reports about those things. His authority and duty in the matter of soliciting shipments of cotton was simply to see the people and ask them to ship their cotton to the plaintiff to be sold on a commission basis. That was the extent of his authority. The plaintiff would tell him from time to time that he could advance certain amounts to shippers of the cotton.

Over the objection of the defendant, the witness testified that it was not the usual, ordinary or customary practice for soliciting agents of cotton factors to make any guaranty as to the price which would be obtained on a subsequent sale of cotton shipped. In witness' entire experience in the cotton business he had never heard of a case of that kind until the present case came up. Witness had never heard of the soliciting agent for a cotton factor guaranteeing the price for which cotton would be sold. The plaintiff did not give its soliciting agent, Deyerle, any power or authority to guarantee prices on cotton shipped. Witness had been in the cotton business for fifty years, and was thoroughly familiar with the usages and customs of the trade. Over the objection of the defendant, the witness stated that, in all his experience, he had never heard of a single case of a cotton factor guaranteeing the price of cotton on a shipment of cotton in the Memphis territory. Deyerle had

no authority to buy cotton for the plaintiff. Plaintiff never bought cotton. It simply sold cotton on a commission basis. There is no difference practically in buying cotton and making a guaranteed price on it. It would be better to buy cotton than to guarantee the price, because, if you bought and there was a profit by increase in the value, the buyer would get the profit, but, under a guaranteed price, there would be no profit and the factor would only suffer a loss.

The defendant, on being recalled, testified that, at the time Deyerle solicited the shipment of cotton, he did not inform witness what his authority was. Witness did not know anything about limitation on his power or duties. Witness relied absolutely on Deyerle's agreement for a guaranteed price, and supposed that Deyerle had explained to plaintiff. Witness never knew anything that led witness to believe there were any limitations on Deyerle's authority.

At the conclusion of the testimony the plaintiff and the defendant both prayed the court to instruct the jury to return a verdict in their favor. The court refused these prayers, and instructed the jury as follows: "The question for you to determine in this case is on the counterclaim. There are no issues of fact on the original claim of the plaintiff. The plaintiff says that this man, Deyerle, did not make any such contract of guaranty whereby he guaranteed to the defendant, Dudley, that he would get 26 cents a pound for the cotton, and further says that, if Deyerle did make such a contract, he had no authority to do it, and that it was without the apparent scope of his authority, and that therefore they are not bound by it, and that is one of the material questions you will have to determine in this case—whether or not the acts of this man Deyerle were within the apparent scope of his authority."

The court further instructed the jury, in effect, over the objection of plaintiff, that, if the jury found that the plaintiff had guaranteed the defendant that if the latter would ship the cotton in controversy to plaintiff it would

guarantee a price of not less than 26 cents per pound, their verdict should be in favor of the defendant for such sum as the jury found to be the difference between the actual price received for the cotton as credited on the account and 26 cents per pound.

The court further instructed the jury that there was no testimony to warrant submission to the jury of the issue as to whether or not Deyerle had actual authority, but that the question for the jury to determine was whether or not his actions were within the apparent scope of his authority.

The court further instructed the jury that "by the apparent scope of authority of an agent is meant such authority as the principal knowingly permits the agent to assume, or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority he does have; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess."

The court further instructed the jury that, unless they found that Deyerle was acting within the apparent scope of his authority when he made the guaranty, if he did make it, the defendant would not be entitled to recover on his cross-complaint, and, further, that the burden was on the defendant to establish the allegations of his cross-complaint by a preponderance of the evidence.

The jury returned a verdict in favor of the defendant in the sum of $561.68. Judgment was entered in favor of the defendant against the plaintiff for that sum, from which is this appeal.

1. The trial court did not err in refusing to transfer the case to the chancery court. There were no such complications of accounts as to justify the appellant in invoking the jurisdiction of the chancery court. There was really no dispute over the amount of appellant's account. The controversy was whether or not the appellant guaranteed the appellee a certain price for his cotton. The simple issue raised by the pleadings was

whether or not the appellee and the appellant had entered into such contract, and that issue of fact was one proper to be submitted to a jury and one which a jury could without difficulty determine. The undisputed testimony shows that the partnership between the Dudleys had been dissolved before the transactions involved arose. The appellant's remedy was adequate and complete at law, and we find nothing in the record that would have justified the trial court in transferring the action to the chancery court, and its ruling in refusing to do so is correct. See *Arkadelphia Milling Co.* v. *Barker,* 109 Ark. 171, 159 S. W. 208; *Cherry* v. *Kirkland,* 138 Ark. 33, 210 S. W. 344.

2. On the issue of fact as to whether or not the appellant guaranteed that the appellee should receive 26 cents per pound for the cotton shipped by appellee to the appellant for sale by the appellant, the testimony was not sufficient to support the verdict. The testimony of the appellee himself on this issue was that Deyerle said in the first conversation he had with appellee, "You ship that (cotton) to J. T. Fargason Company and I'll guarantee that you get 26 cents or better for it." Concerning another conversation Deyerle had with appellee, appellee testified as follows: "He (Deyerle) told me it was bringing around thirty cents for low grade, and I told him I would like to dispose of it, but wanted to realize as much as I could from it. Now, he solicited shipments from me numbers of times, and asked why I didn't ship cotton to Fargason & Company this time, and said, 'If you ship this cotton to J. T. Fargason Company I'll guarantee that you will get 26 cents for the lower grades and more for the other'"

The undisputed testimony was to the effect that Deyerle was employed by the appellant as soliciting agent to solicit cotton for shipment to the appellant to be sold by appellant as a factor. There was also testimony tending to prove that Deyerle had authority to promise those who, at his solicitation, shipped cotton to the appellant for sale by the latter as a factor, certain sums of

money by way of advancement to them on cotton shipped. There was further testimony tending to prove that it was within the scope of Deyerle's duties to make collections from customers and to look after and report the condition of the crops of farmers. But none of this testimony tended to prove that it was within the express, implied or apparent scope of Deyerle's duty and authority as an agent to guarantee that appellant, his principal, would sell his cotton for at least a certain fixed price. Therefore the testimony on the part of the appellee wholly failed to prove that it was within the scope of Deyerle's agency to guarantee the appellee that the appellant would pay him 26 cents a pound for his cotton, whether appellant sold the cotton for that price or not. On the other hand, the uncontradicted testimony of the witnesses for the appellant shows that Deyerle had no such authority, real, implied or apparent. The uncontroverted proof in the record is that it was the custom of the trade of cotton factors not to guarantee the price of cotton sent to them for sale as factors. The undisputed testimony shows that the appellee, sent his cotton to the appellant and constituted the latter his sales agent to sell the cotton for him. The appellee, in his letter of February 24 to the appellant, among other things said, "Please sell this cotton for our account and render statement," and the appellant, in answer to this letter, said, "As soon as this cotton arrives we will place samples on our tables and sell as soon as possible." The testimony of Fargason and of Deyerle shows conclusively that the appellant, as a cotton factor, was the sales agent of the appellee. Appellant, as such sales agent, was to sell the appellee's cotton on a commission basis. Appellant was to receive compensation for its services by commission and not out of profits of the sale. Appellant did not buy appellee's cotton. It was not in the business of buying cotton.

Learned counsel for the appellee relies upon the doctrine announced by this court in a long line of cases to the effect that "a principal is not only bound by the

acts of an agent done under express authority, but he is also bound by all acts of a general agent which are within the apparent scope of his authority, whether they have been authorized by the principal or not, even if they are contrary to express directions;'' and further, ''in the absence of notice to the contrary, a person dealing with an admitted agent has a right to presume he is a general agent and that he is acting within the scope of his authority.'' See *Oakleaf Milling Co.* v. *Cooper,* 103 Ark. 79, p. 86, 146 S. W. 130, 133. See also on the general subject of agents' authority *American Southern Trust Co.* v. *McKee, ante,* p. 147.

The doctrine of these cases is not applicable to the facts of this record and cannot be invoked by the appellee to sustain his contention that it was within the apparent scope of the authority of the soliciting agent, Deyerle, to guarantee that his principal, the appellant, would pay to the appellee at least 26 cents per pound for his cotton. Deyerle was only the soliciting agent of the appellant, and, if it be conceded that the appellee, in dealing with Deyerle, had a right to presume that he was clothed with the powers of a general agent for the purpose of soliciting shipments of cotton to appellant for sale, still this would not justify the appellee in assuming that Deyerle had authority, as such soliciting agent, to guarantee the appellee 26 cents per pound for the cotton shipped by appellee to appellant, because such guaranty was not within the apparent scope of Deyerle's authority. If the appellant had been engaged in the buying of cotton and Deyerle had been employed by appellant to purchase cotton and had agreed with appellee, as the agent of the appellant, to buy appellee's cotton and to guarantee at least 26 cents per pound for such cotton if appellee shipped and sold same to appellant, then such guaranty on the part of Deyerle would have been within the apparent scope of his authority, even though appellant had given him express directions to the contrary. But such is not this case, and such a case has no analogy to the facts of this record. Here the appellant was not buy-

ing the cotton of the appellee, but was appellee's sales agent for the purpose of selling the same. Appellee knew that Deyerle was soliciting his cotton for shipment to the appellant as factor and to be sold by appellant for the appellee. Therefore the appellee, in dealing with Deyerle as the soliciting agent of the appellant, had no right to presume that Deyerle had express or implied authority to guarantee appellee 26 cents per pound if he would ship his cotton to appellant, nor did the appellee have the right to assume that such guarantee was within the apparent scope of his authority as soliciting agent for the appellant.

The facts bring the case within the general rule announced by the court in *United States Bedding Co.* v. *Andre,* 105 Ark. 111-115, 150 S. W. 413, 414, 41 L. R. A. (N. S.) 1019, Ann. Cas. 1914D 800, where we said:

"A person dealing with an agent is at once put upon notice of the limitations of his authority, and must ascertain what that authority is. Such person cannot presume that such authority exists; he cannot rely upon the representations of the agent as to what his authority is; he must make inquiry and use due diligence to learn the nature and extent of such authority. If he does not, he deals with the agent at his own risk; and if the authority of such agent is disputed, it devolves upon him to prove it."

In *First National Bank* v. *Farson,* 226 N. Y. 218-224, 123 N. E. 490, 492, the Court of Appeals, through Mr. Justice Collier, said:

"It is a general rule that the power of an agent to bind the principal in contracts of guaranty or suretyship can only be charged against the principal by necessary implication, where the duties to be performed cannot be discharged without the exercise of such power, or where the power is a manifestly necessary and customary incident of the authority bestowed upon the agent, and where the power is practically indispensable to accomplish the object in view." See also 2 Corp. Jur., p. 6.

Our conclusion is that there is no testimony in the record to warrant the court in submitting to the jury the issue of whether or not Deyerle was acting in the apparent scope of his authority in making the alleged guarantee upon which the appellee relied. It follows that the court erred in instructing the jury on its own motion, and in not granting the prayer of the appellant for a directed verdict in its favor for the amount claimed in its complaint. The judgment is therefore reversed, and, the cause having been fully developed, the clerk of this court is directed to enter judgment in favor of the appellant in the sum of $1,481.29, with interest thereon from March 1, 1923, at 6 per cent. per annum until paid. It is so ordered.