[Crim. No. 1631. Second Appellate District, Division One.—May 16, 1928.]

THE PEOPLE, Appellant, v. J. M. RAY et al., Respondents.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, Stephen Connell, District Attorney and E. N. Clark, Deputy District Attorney, for Appellant.

M. W. Conkling, Arthur Dorn and Edgar B. Hervey for Respondents.

SHAW, J., *pro tem.*—This is an appeal by the People from an order granting a new trial. The defendants were prosecuted upon an indictment in five counts charging the following offenses: First, obtaining of $1,660, lawful money of the United States, from Mrs. E. A. Nulton by false pretenses; second, larceny of the same sum of money from Mrs. E. A. Nulton; third, embezzlement of $1,660, lawful money of the United States, from the Welfare League of America, a corporation; fourth, embezzlement of $11,000 from the Welfare League of America; fifth, larceny of $11,000 from the Welfare League of America. At the conclusion of the prosecution's evidence the court held that there was a

variance between the pleading and the proof as to the first two counts, dismissed the indictment as to those two counts and ordered them resubmitted to the grand jury. The defendants were convicted upon the third and fourth counts and found not guilty upon the fifth count. Thereupon they made a motion for a new trial, which was granted as to both the third and fourth counts.

The motion for a new trial was not written, but oral, and appears from the record to have been made upon the following grounds: First, insufficiency of the evidence; second, errors of law occurring at the trial which prevented the defendants from having a fair trial; third, misconduct of the district attorney which prevented the defendants from having a fair trial. The minute entry of the order granting a new trial does not state the grounds upon which it was made, but appellant claims that the court by its remarks made at the time and set forth in the reporter's transcript excluded insufficiency of the evidence as a ground of the order. We cannot so construe the statement of the court. It appears rather to be a declaration that there was sufficient proof of the *corpus delicti* to justify evidence of the admissions of the defendants and to warrant the submission of the case to the jury. ▮▮ But even had the court orally made such a statement of the reasons for its action as appellant suggests, it could not be regarded as a part of the order; and this court, on finding that insufficiency of the evidence was one of the grounds of the motion and that the order granting it did not specify the grounds upon which it was made, must presume that the new trial was granted for insufficiency of the evidence. (*People* v. *Lum Yit,* 83 Cal. 130 [23 Pac. 228]; *People* v. *Flood,* 102 Cal. 330 [36 Pac. 663]; *People* v. *Dewar,* 49 Cal. App. 263 [193 Pac. 156].) In *People* v. *Flood, supra,* this rule was applied, although the supreme court had before it a written opinion of the trial court filed upon the granting of a new trial, which clearly showed that the new trial was granted because of an instruction which the trial court regarded as erroneous. ▮ Furthermore, even where the trial court has by its order expressly excluded insufficiency of the evidence as a ground for granting a new trial, its action in that respect is conclusive upon the appellate court only

where there is a conflict in the evidence. It is, therefore, proper in this case for us to examine the evidence to ascertain whether its condition is such as to justify the order granting a new trial.

It appeared that the Welfare League of America was a corporation, and that it was engaged in operating on certain premises, known as the Palms Hotel, a home for aged persons. The defendants were members of the board of directors of this corporation and were acting as its managing agents. In that capacity they disposed of a number of life memberships in the home above mentioned, receiving from the parties to whom the same were sold, except in the case of Mrs. Nulton, various sums of money, ranging from $1,000 to $1,500. It appeared without dispute from the testimony of Mrs. Nulton, mentioned in the first and second counts as the victim of the offenses therein charged, that defendants had not obtained from her any lawful money of the United States, as charged in the indictment, but that she had turned over to them in payment for her life membership a promissory note in her favor signed by the defendant Estella Ray and one C. Q. Ray in the principal sum of $1,500, upon which the total amount due at the time, including interest, was $1,660. It was for this variance between the indictment and the proof that the first two counts were dismissed.

The third and fourth counts charged two separate embezzlements from the Welfare League of America; and while there was evidence that the defendants had received the promissory note above mentioned from Mrs. Nulton and considerable sums of money from other persons, for the account of said Welfare League of America, the evidence that the defendants had fraudulently misappropriated any of this property was not at all certain or satisfactory. ■ The fraudulent misappropriation of the property is, of course, one of the essential elements of the crime of embezzlement. There was no showing of a demand for the property by or in behalf of the Welfare League or of any failure or refusal of the defendants to account therefor upon request. There was no showing as to what they did with the note received by them. The evidence as to their use of money received by them consisted entirely of their extrajudicial admissions contained in statements made by Estella

Ray before the grand jury and to a grand jury accountant, and by J. M. Ray to the district attorney, and in written statements made by Estella Ray as to the financial condition of the home. In their statements the defendants claimed with considerable plausibility that all of the expenditures mentioned by them were made for the use and benefit of the Welfare League of America. As to some of the expenditures, this claim was unquestionably true, but the facts admitted would perhaps support a finding that other expenditures were made for the personal benefit of the defendants. The defendants objected to the introduction of these extrajudicial admissions in evidence when they were received and at the close of the prosecution's case they moved to strike them out, basing the objection in both cases on the lack of any other proof of the *corpus delicti*, but the court ruled against them on each objection. "Proof of the *corpus delicti* should be made before the introduction of evidence of extrajudicial statements or admissions, and confessions. But in the absence of any showing of prejudice, irregularity in the order of proof is of no consequence, if the commission of the crime is ultimately established independently of the alleged admissions of the defendant." (8 Cal. Jur. 234; *People* v. *Quarez,* 196 Cal. 404 [238 Pac. 363]; *People* v. *Watters,* 202 Cal. 154 [259 Pac. 442].) To authorize the reception in evidence of such extrajudicial statements, admissions or confessions, or their consideration by the jury, it is not necessary that the other evidence of the *corpus delicti* prove it beyond a reasonable doubt; *prima facie* proof is sufficient for either purpose. (8 Cal. Jur. 235; *People* v. *Selby,* 198 Cal. 426 [245 Pac. 426].) But "the extrajudicial statements or admissions of a defendant, in the absence of other evidence of the commission of the crime charged against him, are insufficient to establish his guilt; and they are equally insufficient to establish the existence of any substantive or essential elements of a crime charged against the defendant." (*People* v. *Chadwick,* 4 Cal. App. 63 [87 Pac. 384]; *People* v. *Quarez,* 196 Cal. 404 [238 Pac. 363]; *People* v. *Villanueva,* 74 Cal. App. 276 [240 Pac. 43].) The ruling refusing to strike out the evidence of defendants' admissions constituted error of such importance as to require the granting of a new trial. Furthermore, excluding these admissions from consideration, as we must

do in determining the sufficiency of the evidence on this point, we find there is no evidence to uphold the conviction on either the third or the fourth count, for want of any proof of a fraudulent misappropriation.

The third count charged the defendants with embezzling $1,660 in lawful money of the United States from the Welfare League of America, and alleged that this was another statement of the offense alleged in the first count. We question whether the latter allegation can be correct, for it would seem that the offense of obtaining the money from Mrs. Nulton must necessarily have been completed before the defendants could embezzle the money so obtained from the Welfare League of America, for which it was obtained. But this allegation connects the offense charged in the third count with the transaction by which defendants delivered to Mrs. Nulton a life membership as above stated. ■ Unless that transaction amounted to a receipt of money by the defendants the evidence is insufficient to uphold the conviction on the third count for the reason that there is a failure of proof that the property embezzled was that described in the indictment. A material variance in the description of the property embezzled is fatal. (10 Cal. Jur. 262; 20 Corpus Juris 478; *People* v. *Meseros,* 16 Cal. App. 277 [116 Pac. 679]; *People* v. *Nelson,* 70 Cal. App. 476 [233 Pac. 406]; *Ex parte Cirro,* 76 Cal. App. 142 [243 Pac. 888].) ■ The note received by the defendants was not money and under the circumstances of the case cannot be treated as money. An agent whose authority is merely to sell property or to collect a debt has no authority to accept in payment a credit on, or a discharge of, his own personal indebtedness. If he does so, the principal may repudiate the transaction and enforce the liability of the other party as if no such transaction had been made; and if the other party claims the existence of special authority for such a transaction, the burden is on him to prove it. (2 Mechem on Agency, 2d ed., sec. 886; *Stetson* v. *Briggs,* 114 Cal. 511 [46 Pac. 603]; *Runyon* v. *Snell,* 116 Ind. 164 [9 Am. St. Rep. 839, 18 N. E. 522]; *Stewart* v. *Woodward,* 50 Vt. 78 [28 Am. Rep. 488]; *Wheeler* v. *Givan,* 65 Mo. 89.) While the defendants appear to have had authority to sell life memberships for the Welfare League of America,

there is no showing at all that their authority was broad enough to cover the transaction with Mrs. Nulton. The Welfare League might therefore have repudiated the transaction if brought to its notice and enforced payment of the price from her in money; and if it had taken this course there could have been no ground for the claim that defendants had received any money in its behalf. It might also have ratified and adopted the transaction, but if it had done so it must have accepted the transaction as made and could not have claimed that the defendants had received for it money instead of the note. In that case its remedy to recover the money would have been a suit upon the note, and a failure to pay the note would not have been an embezzlement. In fact it does not appear that this transaction was ever made known to any of the officers or representatives of the Welfare League other than the defendants themselves; hence, it had no opportunity to elect which course it would take, and it took no action. But these facts cannot convert the receipt of the note into a receipt of money and thus give the transaction an aspect which the Welfare League could not possibly have given to it.

The foregoing reasons are sufficient to uphold the action of the trial court. There are other matters argued and some of the other rulings complained of by defendants may have been erroneous, but there seems no probability that they will occur again upon a new trial and it is therefore not necessary to consider them.

The order is affirmed.

Conrey, P. J., and Houser, J., concurred.