[Civ. No. 8787. First Appellate District, Division Two.—May 26, 1933.]

W. S. PERKINS, Respondent, v. PACIFIC FRUIT EXCHANGE (a Corporation), Appellant.

Athearn, Chandler & Farmer, Frank R. Devlin, Walter Hoffman and Edward Chandler for Appellant.

Treadwell, Van Fleet & Laughlin for Respondent.

NOURSE, P. J.—Plaintiff sued on an alleged guaranty of a minimum return on fruit delivered to the defendant and sold for plaintiff's account. The cause was tried with a jury and plaintiff had judgment. The defendant moved for an instructed verdict and, this motion having been denied, thereafter moved for judgment notwithstanding the verdict. This motion was denied and defendant appeals upon typewritten transcripts.

The plaintiff was the owner of a pear orchard; the defendant for twenty years past had been engaged in the business of receiving fruit on consignment and selling the same for the account of growers. The principal place of business and office of the defendant was located at San Francisco. Special agents were employed at various points in the state, one of whom was located at San Jose. During the year 1929 this special agent procured a contract from the plaintiff whereby the defendant handled his pears upon consignment, taking a seven per cent commission for the service. During the year 1930 the plaintiff approached the special agent in San Jose on several occasions, urging him to purchase on behalf of defendant his 1930 crop. The agent declined to do so, telling him that if he desired to sell his pears he should go to another company which was engaged in that business. The plaintiff testified that the agent then told him that if he would let the defendant ship his pears he

would net the plaintiff from fifty cents to seventy-five cents on each box. The agent testified that he merely told the plaintiff that his pears "should bring around fifty cents to seventy-five cents a box as they did last year". Plaintiff also testified that although the defendant thus undertook the additional obligation of a guaranty he was to pay the defendant the same commission for handling his crop as he paid in 1929. Plaintiff employed a truckman to haul his pears to the defendant's plant and as each lot of fruit was delivered to the defendant's plant a receipt was given to the truckman which expressly stipulated that the defendant "in no way guarantees that the grower shall receive a particular or any price for said fruit". After each lot of fruit was packed out the company mailed to the plaintiff a statement entitled "Consigned fruit pack out statement", and after each sale was made by the defendant it mailed to the plaintiff a statement specifying the number of boxes sold, the date sold, the variety and total selling price yielded. Each of these statements itemized the amount of charges incurred with respect to each lot sold and specified the profit or loss on each lot. Where profit was shown in the statement a check was mailed to the plaintiff with the statement and the proceeds of checks so received were retained by him without protest. The bulk of the fruit was sold by the defendant by the end of the year 1930. In July, 1931, the defendant made demand on the plaintiff for the payment of $760 claimed to be due for charges in handling the fruit in excess of the total proceeds. On August 8, 1931, the plaintiff, after consultation with his attorneys, for the first time informed the defendant that he claimed a guaranty of the net return from the sale of the fruit.

On this appeal the real question involved is whether the respondent sustained the burden of proving that the agent had actual or ostensible authority to bind his principal to the alleged guaranty. ▮▮▮ At the outset it must be conceded that when the third party seeks to hold a principal to a guaranty made by an agent the burden is on such party to prove authority of the agent to make the contract. (*Peterkin* v. *Randolph Marketing Co.*, 48 Cal. App. 300, 302 [191 Pac. 947]; *People* v. *Ray*, 91 Cal. App. 781, 786 [267 Pac. 593]; *Acme Gravel Co.* v. *Bryant*, 111 Cal. App. 411,

414 [295 Pac. 909]; *Ewing* v. *Hayward,* 50 Cal. App. 708, 715 [195 Pac. 970].)

Though there is a sharp conflict in the testimony as to the making of the contract with the agent there is no conflict in the proof that the agent did not have any authority to bind his principal to any guaranty of a net return upon the produce sold. The direct and only evidence is that such authority was not conferred upon the agent. The respondent does not contest this state of the evidence, but argues that because the jury found in his favor we must assume that it disbelieved the direct evidence of the want of such authority. If the burden of proof rested upon the principal to show want of authority in his agent this point might be well taken, but it falls before the settled rule that that burden rests upon the plaintiff. We have read the evidence with extreme care and fail to find a single word which supports the contention that the agent was expressly or impliedly authorized to make any guaranty of this character. (We disregard, of course, respondent's statement that the agent was a "fruit buyer" for the appellant because that is not in the evidence.) So far the case is parallel to *Peterkin* v. *Randolph Marketing Co., supra,* which, in turn, is supported by abundant authority. (See 2 C. J., pp. 588, 665; *Cannon* v. *Long,* 135 Wash. 52 [236 Pac. 788]; *Fargason* v. *Dudley,* 173 Ark. 1148 [294 S. W. 6]; *First Nat. Bank* v. *Farson,* 226 N. Y. 218 [123 N. E. 490].)

But beyond the rule of these authorities we find the additional factor in this case that under the statutes of this state neither the principal nor the agent could legally make the contract sued on and of this the respondent must, of course, be presumed to have had knowledge. The business of produce dealers in this state is controlled by the "Produce Dealers' Act" of 1927 (Deering's Gen. Laws, Act No. 6154), supplemented by the "Deciduous Fruit Dealers' Act" of 1929 (Deering's Gen. Laws, Act No. 6155). The first act defined a "produce dealer" as one who shall receive produce for sale on commission and requires him to procure a license from the state department of agriculture and to deposit a bond for the faithful performance of his duties. The second act defines three classes of those dealing with growers in deciduous fruit, (1) "the cash buyer", (2) "the consignment shipper", and (3) "the dealer".

The consignment shipper is defined as one who contracts with the grower for the marketing of deciduous fruits for the sole account and risk of the grower and who does not either in writing or verbally guarantee any price to said grower. A license and bond is required of the dealer as in the "Produce Dealers' Act". Violations of the first act are made a misdemeanor and violations of the second are made a felony. The undisputed evidence is that the appellant was operating under a "produce dealer's" license. The appellant was not, therefore, a deciduous fruit dealer within the terms of the 1929 act, but came within the terms of a "consignment shipper" as defined in the "Deciduous Fruit Dealers' Act". Hence, not being licensed as a dealer under the latter act, the appellant could not "either in writing or verbally guarantee any price to said grower for his deciduous fruits". If the appellant or its agent had made the guaranty alleged to have been made they would have run counter to the penal provisions of the 1929 act.

For these reasons the appellant argues that it must be presumed that the guaranty was not made because of the legal presumption against crime. The respondent answers that this does not follow because the acts dealing with produce dealers are unconstitutional upon grounds which we need not state. We may assume for the moment that these acts are unconstitutional and that accordingly the presumption of innocence of crime is not applicable. But if we make this assumption there is another presumption which comes into play—that the ordinary course of business has been followed. The courts may take judicial knowledge that men do not ordinarily violate a penal statute on the chance it may at some time be declared unconstitutional and they might thus escape punishment, but that, in the ordinary course of business they will follow the terms of the statute.

In its final analysis the case is that the respondent offered no evidence tending to prove the authority of the agent to make the guaranty relied on and presented no facts from which an inference of that authority could be drawn. On the other hand, the undisputed direct evidence is that such authority did not exist and when this evidence is added to the presumptions that the authority was not

conferred upon the agent the case is one not of a mere preponderance of evidence, but one where the only evidence supports the contention of the appellant. As there is no evidence, direct or inferential, which supports the verdict the appellant's motion for a judgment notwithstanding the verdict should have been granted.

The judgment is reversed, with directions to the trial court to enter judgment for the appellant as herein indicated.

Sturtevant, J., and Spence, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 25, 1933.