EDMONDS, J.
 

 By this appeal, the right to recover upon a statutory bond given pursuant to the Produce Dealers Act of 1927 (Stats. 1927, p. 1812), is challenged by the surety. It contends that the judgment of the trial court in favor of the plaintiff is not sustained by the evidence.
 

 The suit was brought by the Director of Agriculture, in his official capacity, in conformity with the provisions of the act. The real party in interest is C. G. DeRaad, a fruit grower, and the present controversy concerns his transactions with A. G. Johns and H. A. Bonzagni, doing business as Central Fruit Distributors. In the season of 1931 the latter
 
 *514
 
 were buying fruit to pack and ship to markets. They had received a license from the department of agriculture authorizing them “to act as Produce Dealer” and had given the bond required. The condition of this bond, upon which the appellant is the surety, is that the principal “shall well and truly comply with the provisions of the Act, and shall faithfully and honestly handle farm products as such licensed dealer ’
 

 In March, 1931, Johns and Bonzagni made a contract with Nash-DeCamp Company, commission merchants, with whom they had dealt for some time. This contract provided that the former, designated as the “shipper”, were indebted to the latter, named the ‘ distributor ’ ’, for more than $10,000 on account of past business; and that for -the purpose of protecting this amount and in consideration of advances not exceeding $2,500 to assist in handling the 1931 business, the shipper should permit the distributor to market all its 1931 shipments, subject to certain charges. It was also agreed that the distributor might retain 7 per cent of the selling price to apply on past indebtedness; that advances might be deducted from the proceeds; and that the distributor should have a lien on all funds belonging to the shipper, except the proceeds of fruit consigned to the shipper by the grower, to pay indebtedness and advances.
 

 In the following month Central Fruit Distributors, as “shipper”, and C. G-. DeRaad, as “grower”, entered into a contract by which Mr. DeRaad undertook to pick and deliver all apricots grown on his ranch in 1931 to the shipper, who in turn agreed to market them. A price of $40 per ton was guaranteed, but later Mr. DeRaad waived this provision. Under this agreement Mr. DeRaad delivered 18,-834 crates of apricots, to 5,996 of which the guaranteed price applied. Central Fruit Distributors forwarded the fruit to Nash-DeCamp Company, which shipped it east for sale and submitted accounts showing the amount received for each car of fruit. Central Fruit Distributors in turn rendered an account to Mr. DeRaad.
 

 In the 1931 season Central Fruit Distributors dealt with other growers and delivered almost 40,000 crates of apricots, including those received from Mr. DeRaad, to Nash-DeCamp Company. The company paid them a little more than the proceeds of all fruit delivered to it but did not apply these
 
 *515
 
 payments against the fruit of any particular grower, in spite of the fact (stipulated to at the trial of this action) that it knew at all times that Mr. DeRaad had consigned his fruit to Central Fruit Distributors for sale. Mr. De-Raad received only $1500 from Central Fruit Distributors, and at the close of the season there was due to him $1168.75 for fruit delivered on a guaranteed price basis and $2,084.23 for that delivered on straight consignment. In August, 1931, he brought suit against Central Fruit Distributors and Nash-DeCamp Company. Central Fruit Distributors went into bankruptcy in January, 1932. Later the plaintiff recovered judgment against Nash-DeCamp Company for $2,084, the proceeds of the fruit delivered on consignment. From this judgment an appeal was taken and it was affirmed.
 
 (De-Raad
 
 v.
 
 Nash-DeCamp Co.,
 
 (Cal. App.) 23 Pac. (2d) 68.)
 

 Nash-DeCamp Company then petitioned this court for a hearing. While that proceeding was pending, the company’s attorneys arranged a most unusual settlement of the matter. Mr. DeRaad was paid $2,453.47 as the amount of his judgment, interest, and costs. He signed a statement reciting that he “has changed attorneys in said action and appeal and that........has been and is substituted” for his former attorney. He also signed and verified a claim against Central Fruit Distributors and the appellant surety to be filed with the department of agriculture as the basis for a suit, and an assignment to Nash-DeCamp Company of this claim “and the indebtedness represented thereby”. These instruments were delivered to counsel for Nash-DeCamp Company. An attorney selected and paid by that company then entered into a stipulation with Corbet and Selby, counsel of record for, the company in the DeRaad case, that the petition for hearing in this court be granted, the judgment reversed, and the cause remanded for a new trial. Subsequently the same attorneys signed a stipulation in the superior court that the action be dismissed. This action was then brought upon a complaint which pleads the contracts made by Mr. DeRaad and the delivery of fruit made thereunder, and alleges that on July 28, 1933, the sum of $3,322.28 remained wholly due, owing, and unpaid to him. from Central Fruit Distributors and Fidelity Deposit Company of Maryland. The plaintiff also declares that Mr. DeRaad’s verified claim for this amount
 
 *516
 
 was filed with the department and thereafter assigned by him to Robert IT. Lee. ■
 

 These facts are not disputed. However, the trial court made the following findings which are, more properly, conclusions of law: At the close of the season Central Fruit Distributors and the appellant, as surety upon the bond, owed C. G. DeRaad '$3,252.98 and interest, none of which had been paid; Nash-DeCamp Company never paid C. G. DeRaad for any of his fruit except by advances to Central Fruit Distributors, and is not responsible for the latter’s failure to pay him. Moreover, the company was entitled to pay Central Fruit Distributors; the proceeds of its sales were not trust funds and it made proper accounting of them. At the time C. G. DeRaad made demand upon it the company had none of these proceeds in its possession.
 

 There are further findings: C. G. DeRaad had no right to recover from Nash-DeCamp Company all or any part of the judgment which he obtained against it. (This is directly contrary to the judgment in the ease which was dismissed.) The company did not agree to nor pay this judgment. After the verified claim of Mr. DeRaad against Central Fruit Distributors and the appellant surety was filed with the department of agriculture, Nash-DeCamp Company furnished the consideration for an assignment of his claim for collection. The company did not accept the original assignment which Mr. DeRaad made to it but returned it to him in substitution for one made to Robert H. Lee, who accepted the assignment and holds it for the benefit of Nash-DeCamp Company to the extent of $2,453.47 and for the benefit of Mr. C. G. DeRaad to the extent of any excess. Neither the plaintiff nor Robert IT. Lee is estopped from denying that Mr. DeRaad obtained a judgment, or that the judgment ever became final, or that it is
 
 res judicata,
 
 or that it has been paid. Furthermore it is not inequitable to allow the respondent to recover from the surety upon the bond.
 

 The appellant contends that it was exonerated from the obligation of its bond by the agreement of Mr. DeRaad and the Nash:DeCamp Company under which, it asserts, “the parties to the judgment united forces for the purpose of mulcting the surety company”. It relies upon the rule that a surety is exonerated by any act of the creditor which prejudices its rights or lessens its security. (Sec. 2840,
 
 *517
 
 Civ. Code.) It also claims that the assignment made by Mr. DeRaad changed the status of Nash-DeCamp Company from that of a debtor of the grower, against which it could proceed by subrogation, to that of a creditor of the surety, in violation of section 2849 of the Civil Code.
 

 As against these contentions the respondent takes the position that Central Fruit Distributors was a factor, and as such was entitled to sell and deliver the fruit to Nash-DeCamp Company and to receive payment for it in advance of its sale by the latter. But the evidence shows conclusively that Nash-DeCamp Company never paid Central Fruit Distributors for the DeRaad fruit. It paid them a total of $17,500 in various amounts which were entered upon its books as “advances”. Clearly it made these “advances” in accordance with the provisions of its contract with Central Fruit Distributors. The word “advance” as ordinarily used, implies a loan of money.
 
 (California Bean Growers Assn.
 
 v.
 
 Williams,
 
 82 Cal. App. 434 [255 Pac. 751];
 
 Shelley
 
 v.
 
 Byers,
 
 73 Cal. App. 44 [238 Pac. 177]; 2 C. J. S. 497.) The account of Nash-DeCamp Company with Central Fruit Distributors indicates the sale of forty lots of apricots, about one-half of which came from the DeRaad ranch, and shows that $11,750 of the total advances were paid before it sold any of the DeRaad fruit. All the amounts advanced were in even thousands of dollars except two of $750 each, and no item shows any connection with the net amount due for the sale of any particular lot of fruit.
 

 Nash-DeCamp Company concedes that it knew Mr. DeRaad had consigned his apricots to Central Fruit Distributors; thus an implied contractual relation or privity was established between it as a subagent and Mr. DeRaad. This privity made the company accountable to him and, because it had not paid for the fruit, the net proceeds of its sales constituted a trust fund for which it was liable.
 
 (Petersen
 
 v.
 
 Lyders,
 
 139 Cal. App. 303 [33 Pac. (2d) 1030];
 
 Bills
 
 v.
 
 Schliep,
 
 127 Fed. 103;
 
 Union Stockyards Nat. Bank
 
 v.
 
 Gillespie,
 
 137 U. S. 411 [11 Sup. Ct. 118, 34 L. Ed. 724].)
 

 In bringing his action against Nash-DeCamp Company, Mr. DeRaad acted' promptly, as he was required to do by the law of suretyship, and recovered a judgment which fixed the liability of that corporation to him. Afterwards, by accepting payment from the judgment debtor, he dis
 
 *518
 
 charged the surety from any liability for 1he debt sued upon, and the instruments which he executed in favor of Nash-DeCamp Company and its nominee transferred no right of action. However, the suit was brought only for the amount due from the apricots delivered upon consignment, apparently upon the assumption that Nash-DeCamp Company was not liable for the proceeds from the fruit upon which Central Fruit Distributors had guaranteed a minimum price. The respondent claims that he is entitled to recover from the surety for this fruit as well as for that upon which no price was set.
 

 However, the director of agriculture has no cause of action. The bond sued upon was given in conformity with the Produce Dealers Act of 1927
 
 (supra).
 
 Two years later the Deciduous Fruit Dealers Act of 1929 (Starts. 1929, p. 665) became a law. Only a dealer licensed under the later act may guarantee a price to a grower for his deciduous fruits.
 
 (Perkins
 
 v.
 
 Pacific Fruit Exchange,
 
 132 Cal. App. 278 [22 Pac. (2d) 535].) It has been held that this act supplements the former and that “the possession of a produce dealer’s license procured in accordance with the Produce Dealers Act is not sufficient to excuse the failure of a dealer in deciduous fruits to have obtained the special license required by the Deciduous Fruit Dealers Act”.
 
 (People
 
 v.
 
 Jarvis,
 
 135 Cal. App. 288 [27 Pac. (2d) 77, 84].) Since the later act places upon dealers different and additional requirements not contemplated by or included within the terms of the earlier one, it follows that the surety cannot be held liable for an obligation arising out of a contract which its principals could not lawfully make under the license which they held.
 
 (Betzer
 
 v.
 
 Olney,
 
 14 Cal. App. (2d) 53 [57 Pac. (2d) 1376].) The obligation of a surety is
 
 strictissimus juris
 
 and it cannot be held for anything which is not within the strict letter of its contract.
 
 (Heidt
 
 v.
 
 Minor,
 
 89 Cal. 115 [26 Pac. 627].) The contract of the surety guaranteed that the principals would comply with the provisions of the Produce Dealers Act
 
 (supra),
 
 not some other act thereafter passed by the legislature.
 

 An additional reason why the judgment cannot be sustained is that in the present action, Nash-DeCamp Company, under its agreement with Mr. DeBaad, will profit by any recovery up to the amount which it paid. This would
 
 *519
 
 quite inequitably allow the company to recoup from the surety an amount for which it is liable, but payment of which it avoided by buying out its creditor and becoming the plaintiff in the case in which it was sued as a defendant.
 

 The judgment is reversed with directions to the trial court to enter judgment in favor of the appellant.
 

 Curtis, J., Langdon, J., Shenk, J., Seawell, J., Houser, J., and Waste, C. J., concurred.
 

 Rehearing denied.