[Civ. No. 27028. Second Dist., Div. Two. Nov. 22, 1963.]

THE PEOPLE, Plaintiff and Appellant, v. GREAT AMERICAN INSURANCE COMPANY, Defendant and Respondent.

554

Stanley Mosk, Attorney General, Dan Kaufmann, Assistant Attorney General, and Neal J. Gobar, Deputy Attorney General, for Plaintiff and Appellant.

Anderson, McPharlin & Conners and George C. Montgomery for Defendant and Respondent.

HERNDON, J.—This appeal is taken by the People of the State of California from that portion of the judgment of the trial court denying the People's prayer for recovery upon a surety bond underwritten by defendant and respondent Great American Insurance Company as security for the payment of state sales taxes incurred by said defendant's principal for the period April 1, 1957, to May 9, 1957,[1] and denying all recovery upon an endorsement to the bond which extended its coverage to include local sales taxes imposed by the provisions of the "Bradley-Burns Uniform Local Sales and Use Tax Law."[2]

■ The facts essential to a determination of the legal issues presented to the trial court are not in dispute. Therefore all the determinations made by the trial court are con-

[1] Recovery was allowed for the period May 9, 1957, to May 17, 1957.
[2] Revenue and Taxation Code, §§ 7200 et seq.

clusions of law which, of course, are not binding upon this court. (*San Diego T. & S. Bank* v. *County of San Diego*, 16 Cal.2d 142, 153 [105 P.2d 94, 133 A.L.R. 416].)

At all times material to this proceeding, Berl Berry, Inc., a California corporation, hereinafter referred to as the taxpayer, was engaged in the business of selling tangible personal property at retail within the County of Los Angeles. Since October 16, 1951, it had provided security for payment of its state sales taxes by means of a bond underwritten by the National Surety Corporation as surety in accordance with the provisions of section 6701 of the Revenue and Taxation Code. This bond had been in the maximum amount of $10,000 since May 18, 1955.

Sometime prior to April 1, 1957, the taxpayer requested defendant to furnish it with its bond to replace the existing bond of the National Surety Corporation. On April 1, 1957, defendant executed its bond in the amount of $10,000 with the effective date of April 1, 1957, inserted and mailed it to the taxpayer. The taxpayer executed this bond on April 15, 1957, and forwarded it directly to the State Board of Equalization, hereinafter referred to as the "Board." Defendant charged the taxpayer premiums upon a yearly basis computed from the effective date of April 1, 1957.

In due course, this bond was examined and approved as to form by clerical employees in the Sacramento office and on May 9, 1957, the Los Angeles District Office was advised that defendant's bond in the amount of $10,000, effective April 1, 1957, had been received and placed in safekeeping. Defendant's bond was in a form that had been provided by the Board prior to the adoption of the Bradley-Burns Uniform Local Sales and Use Tax Law, and therefore it did not provide that the coverage provided for therein should extend to such local taxes. On May 9, 1957, the Board also advised the Los Angeles District Office of this fact and requested that an endorsement extending the coverage be obtained. On July 18, 1957, an agent of defendant executed the desired endorsement which provided that it was to be attached to and made a part of the bond previously issued, effective April 1, 1957.

In the interim, however, on May 17, 1957, the taxpayer had made an assignment for the benefit of creditors, and there were no further taxable transactions after that date. On May 29, 1957, defendant sent to the Board at Sacramento notice of its intention to cancel its bond and on June 17, 1957, was

advised by the Board that its effective cancellation date was June 30, 1957.

Following several determinations and redeterminations, it was established that the taxpayer owed in excess of $24,000 under the Sales and Use Tax Law. Demands were made upon both National Surety Corporation and defendant for the full amount of their respective bonds. National Surety Corporation remitted $10,000, and it is conceded that the taxable transactions antedating April 1, 1957, exceeded this amount. Defendant refused to make any remittance upon billings covering the full period from April 1, 1957, to May 17, 1957. It was the disagreement as to the correctness of this refusal that formed the basis for the instant action.

The only questions presented for determination were: (1) What was the effective date of defendant's bond; and (2) Was the endorsement extending coverage void because it was not executed and delivered until after the effective cancellation date of defendant's bond?

Since the terms of a surety contract are to be interpreted by the same rules that are applied to other contracts (Civ. Code, § 2837; *Bank of America* v. *Dowdy*, 186 Cal.App.2d 690, 693 [9 Cal.Rptr. 779]), it is most difficult to perceive any reasonable basis upon which defendant may support the assertion that its bond, which clearly provides on its face that it was effective as of April 1, 1957, and which was executed by it on April 1, 1957, and for which it charged and received a premium computed from April 1, 1957, nevertheless failed in its manifest purpose to create liability from that date forward.

Defendant has not pointed to any statute, or to any rule or regulation of the Board, that directly specifies or declares the date upon which such a bond becomes effective. Neither does defendant contend that the fact that the bond was not received and approved as to form by the Board until after the date determined by defendant itself for the commencement of its liability, resulted in the creation of a later effective date. Such a contention, of course, would be wholly unmeritorious, because, except insofar as the Board has the right to demand that security satisfactory to it be placed with it (Revenue and Taxation Code, § 6701), and to withhold issuance of its permit to conduct business until such security has been received (Revenue and Taxation Code, § 6068), it has no authority to determine, as between the contracting parties, when the surety's liability shall begin. ▮ The surety

and its principal, the taxpayer, may contract for any commencement date and its effectiveness is dependent neither upon receipt of the instrument evidencing the suretyship, nor upon approval of its form by the Board. It may withhold issuance of its permit until its requirements are met, but, when this has been done, the effective date is the one contracted for by the parties whether it be before or after the Board's "approval" or "acceptance" of the security for its purposes.[3]

Defendant does assert that it placed the effective date of April 1, 1957, on the face of its bond upon its issuance because the instructions appearing thereon indicated that, where the bond was issued for an existing business, the effective date should be the first day of the current calendar quarter. Rather than aiding defendant, however, this assertion would appear only to provide further proof that it understood and voluntarily accepted an assumption of liability from that date forward.

Actually, defendant's entire argument appears to rest upon a foundation, assertedly provided by section 2851 of the Civil Code, notwithstanding that this section, by its very terms, deals only with the *termination* of liability upon a statutory licensee or permittee bond and has nothing whatsoever to do with the *commencement* of liability upon such bonds. In particular, this section provides in part, "At the expiration of thirty days after the filing of notice of termination, *or upon the filing and acceptance of a new bond*, whichever event first occurs, the bond is terminated and the surety is relieved of all liability which otherwise thereafter would arise on its bond." (Italics added.)

Defendant begins its argument upon the basically incorrect premise that because liability under an existing bond may be

---

[3]The depositions of three employees of the Board were introduced into evidence. From these it is clear that the extent of their "approval" or "acceptance" of bonds presented for filing, was the checking of the name of the principal on the bond against the taxpayer's name in the Application for Seller's Permit in the master file and examining the bond to see that it was properly completed with respect to amounts, effective date, and signatures of principal and surety. None of these employees were of such rank that it could possibly be argued that they were authorized to establish policy for the Board, except as to mechanics of receipt and filing for safekeeping of securities received. However, insofar as they did express their opinions regarding the policy of the Board they were in unanimous agreement that they always accepted the date placed upon the face of the bond itself as constituting the effective date thereof.

terminated only "upon the filing and acceptance of a new bond," the "filing and acceptance" of the new bond is a prerequisite to *its* effectiveness. Manifestly, there is nothing whatsoever in the language of the cited statutory provision to suggest that the Legislature was departing from its clear purpose to provide rules for the *termination* of liability in order to establish a condition precedent to the effective assumption of a new and different liability, contrary to the express terms contained on the instrument providing therefor.

From this initially incorrect premise, defendant next contends that there had been no "acceptance" of its bond until May 9, 1957, when the Board notified its district office that defendant's bond was on file, and hence that its liability did not commence until that date. This argument is made in the face of the facts: (1) that the bond provides that its effective date is April 1, 1957; (2) that it exacted and collected premiums based upon this effective date; and (3) that the notice from the Board to its district office specifically stated that April 1, 1957, was the effective date thereof.

To complete this intricate and remarkable argument, defendant contends that since the Board cannot *demand* more than $10,000 of security (§ 6701), it cannot receive or hold security in any greater amount. Therefore, it concludes, since National Surety Corporation was liable upon its earlier bond until its termination upon "acceptance" of defendant's bond, and two bonds of $10,000 each could not be effective during the same period, defendant's liability did not begin on the date for which it had contracted, and not until May 9, 1957.

It is unnecessary, of course, to determine the issue as to whether or not section 6701 precludes the acceptance of security in an amount greater than $10,000 when voluntarily tendered, in order to determine the lack of merit in defendant's strained statutory construction and argument.

First, it is obvious that if there was any "overlapping" of liability created by the statute relating to termination of the old bond, this would not be a matter that would permit defendant to escape the liability for which it had contracted and for which it had received payment. Secondly, in reality there is no overlapping, for, although the potential liability of the surety on the old bond would continue until the new bond was actually accepted, i.e., found to conform to the requirements of the Board, once this fact had been established,

its liability would be terminated as of the effective date of the new bond. That is, absent some showing that the taxpayer desired the two bonds to be effective at the same time, there is no reason to consider the question of the maximum amount of security that the Board might retain. Here the taxpayer bargained for, and obtained, a new bond effective April 1, 1957, to replace its preexisting bond. The accompanying letter with which the taxpayer forwarded the bond to the Board indicated that it was intended to replace the prior bond.

Not only is there no suggestion on the face of defendant's bond, nor in the accompanying transmittal letter, that it was not to become effective until the prior bond was terminated, but it was stipulated that defendant's agent who executed the bond would testify if called as a witness, "that he did not know on April 1, 1957, when the bond of National Surety Corporation was to be cancelled and at no time did he inquire when this bond would be cancelled."

Further, it was not until November 13, 1958, over 17 months after the issuance of its bond, that defendant first asserted that its bond became effective on some date other than April 1, 1957. All correspondence between defendant and the Board indicated an assumption that this was the correct date. It was only after November 12, 1958, when defendant learned that National Surety Corporation's notice of cancellation made on April 8, 1957, would not have been effective to terminate its liability until May 8, 1957, absent the "filing and acceptance" of defendant's bond, that it urged the ineffectiveness of its own contractual liability.

However, as previously indicated, the fact that National Surety Corporation's potential liability would not have been terminated by its unilateral notice of cancellation until May 8, 1957, was not defendant's concern in any event, and, under a proper interpretation of section 2851 of the Civil Code relating to such termination, National Surety Corporation's liability did terminate upon the effective date of defendant's bond. Hence, no question of overlapping bonds actually exists.

■ Seeking to strengthen its position, defendant filed as exhibits billings and copies of letters of determination of taxes due which indicated that certain clerks employed by the Board initially had computed the taxable transactions attributable to National Surety Corporation to May 8, 1957, the date the records of the Board indicated that its unilateral notice of cancellation would have been effective, and also at-

tributed to defendant certain of those same transactions that occurred between April 1, 1957, and June 30, 1957.

Obviously, such charges were erroneous and were entirely attributable to the mechanics of clerical billing. However, if they had resulted in dual payments (which in this instance they did not, since National Surety Corporation's bond was entirely depleted by payments on transactions antedating April 1, 1957), it would have been National Surety Corporation, and not the defendant, who would have been entitled to complain thereof and to seek a refund of any improper charges exacted.

Turning to the second issue presented on this appeal, defendant contends, without citation of any authority, that because its bond had been cancelled effective as of June 30, 1957, thereafter, as a matter of law, it could not validly extend the coverage that had been provided during the life of the bond. Neither common sense nor persuasive precedents would appear to support such a contention.

As stated in *Meyers* v. *Block*, 120 U.S. 206, 214 [7 S.Ct. 525, 30 L.Ed. 642, 644], "It is undoubtedly true that a surety cannot be held beyond the terms or legal effect of his engagement; and when that has respect to the conduct or fidelity of the principal, or to any other matter usually contemplated as arising in the future, it is to be interpreted prospectively, and not retrospectively. But if, from the nature of the case, the subject of guaranty is a past transaction in whole or in part, and the language of the engagement, taken in its natural sense or legal effect, is broad enough to cover it, such language may properly be construed to do so."

Defendant's *"Endorsement to Bond of Seller"* expressly provided in part: "In consideration of the premium charged for the attached bond, it is hereby understood and agreed that: Effective from the 1st day of April, 1957, this bond is and shall be available and applicable for the payment of both sales and use tax liability which may become due from the principal under the Sales and Use Tax Law of the State of California and the sales and use tax liability which may become due under State-Administered Local Sales and Use Tax Ordinances." Additionally, since the bond itself had theretofore been filed with the Board, defendant had typed upon this form endorsement the following: "To be attached to and made a part of bond 665449 issued by Great American Indemnity Company, Surety, on behalf of Berl Berry, Inc., effective April 1, 1957."

Certainly, such language is broad enough to cover the period during which the bond had been effective, even if this be considered as retrospective in operation, and there can be no question but that defendant had contracted initially to provide such extended coverage and had charged the taxpayer a premium that included such extended coverage. Since the surety, the principal and the obligee had desired such complete coverage from the inception of the liability period, we can perceive no public policy that would prohibit this desired result from being confirmed at a later date.

Additionally, it has been held that a surety contract is not retrospective in operation merely because part of the transactions with which the contract is concerned have been consummated earlier when the actual *defaults* insured against are still prospective. (*Reed* v. *Maryland Casualty Co.*, 244 F.2d 857, 862.) In the instant case, defendant's basic bond provided in part: "Now, Therefore, if the above bounden principal shall well and truly comply with all the provisions of said Sales and Use Tax Law as respects transactions occurring on and after April 1, 1957, and *in particular pay all amounts* including interest, penalties and costs *which may become due under said Law* with respect to said transactions, then this obligation shall be null and void, otherwise to remain in full force and effect." (Italics added.)

Therefore, although the transactions upon which the tax would be based had been consummated prior to the filing of the endorsement that extended the coverage to conform to the original intent of all parties, nonetheless no *default* had as yet occurred, because the taxes imposed on these transactions did not become due and payable until "the last day of the month next succeeding each quarterly period". (Rev. & Tax. Code, § 6451). In the instant case, this would be July 31, 1957, a date beyond the day the endorsement was filed by the defendant.

The judgment is reversed.

Fox, P. J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 22, 1964.