[Civ. No. 24728. Second Dist., Div. Two. Nov. 25, 1960.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Appellant, v. H. M. DOWDY et al., Defendants; GENERAL CASUALTY COMPANY OF AMERICA (a Corporation), Respondent.

Samuel B. Stewart, Hugo A. Steinmeyer, Robert H. Fabian and William H. Taylor, Jr., for Appellant.

Maurice H. Wallbert for Respondent.

HERNDON, J.—This is an appeal by the plaintiff from a judgment in favor of the defendant General Casualty Company (hereinafter called "the Casualty Company") in an action against a notary public and his bonding company on his official bond to recover for damages alleged to have resulted from the fraud and deception of the notary. Dowdy, the notary, failed to appear and no appeal has been taken from the default judgment entered against him.

The facts are not in dispute and were stipulated to be as follows: "[T]hat H. M. Dowdy was appointed a notary public and that on July 9, 1954, the defendant casualty company issued its indemnity bond which was recorded; that thereafter on May 15, 1956, defendant Dowdy, using his official seal, forged the name of M. L. Johnson to the jurat on a certificate of business fictitious firm name, which certificate stated that defendant Dowdy was the owner of Supreme Supply Company; that Dowdy was at that time an employe of Supreme Supply Company which was a sole proprietorship owned by Carl P. Kriwanek. By the use of the certificate of business fictitious firm name, bearing the forgery, defendant Dowdy was able to open a bank account with the plaintiff in the name of Supreme Supply Company and to process checks aggregating $8,117.10, payable to Supreme Supply Company through said bank account.

"Plaintiff guaranteed the validity of the endorsements on said checks and became liable to Kriwanek. Kriwanek assigned his claim against Dowdy to the Bank."

The plaintiff contends (1) that Dowdy's use of a fictitious name on the notarial acknowledgment was an act of misconduct within his official capacity as notary public and thus covered by the insurer's bond, and (2) that Dowdy's official misconduct was the proximate cause of the loss.

The contract of insurance issued by the Casualty Company was an agreement to act as surety for the notary (Gov. Code, § 8212.) As early as 1891 the court, in *Heidt* v. *Minor,* 89 Cal. 115 at 118 [26 P. 627], stated the universal rule applicable to construction of surety bonds as follows: "The sureties upon an official bond undertake for nothing, which is not within the letter of their contract. 'The obligation is *strictissimi juris* . . . . They have consented to be bound to a certain extent only, and their liability must be found within the terms of that consent.' " (See also *Bloom* v. *Bender,* 48 Cal.2d 793, 803 [313 P.2d 568]; *Brock* v. *Fidelity & Deposit Co.,* 10 Cal.2d 512, 518 [75 P.2d 605].) The Casualty

Company insists that its obligation be construed in the light of this rule. ■ However, reference to section 2837 of the Civil Code indicates that a surety contract is to be interpreted by the same rules as in the case of other contracts. Thus, it is only after the meaning of the terms of the contract has been ascertained that the rule of *strictissimi juris* comes into operation. (*Bridges* v. *Price*, 95 Cal.App. 394, 397 [273 P. 72]; *Bloom* v. *Bender, supra*, at p. 803.)

■ Where a surety bond is given pursuant to the requirements of a particular statute, the statutory provisions are incorporated into the bond (*Hartford Acc. etc. Co.* v. *City of Tulare*, 30 Cal.2d 832, 837 [186 P.2d 121]; see 46 Cal.Jur.2d, Suretyship, § 29). [4] Here the bond was given pursuant to sections 8212, 8213 and 8214 of the Government Code. The latter section provides as follows: "For the *official misconduct* or neglect of a notary public, he and the sureties on his official bond are liable to the persons injured thereby for all the damages sustained." (Emphasis supplied.) The bond executed by the Casualty Company provided, in part, that ". . . if the said H. M. Dowdy shall well, truly and *faithfully perform all official duties* required of him by law . . . then the above obligation to be void, otherwise to remain in full force and virtue." (Emphasis supplied.) Under the above rule of construction, the statutory phrase "official misconduct" is read into the surety contract. We must therefore examine Dowdy's conduct to determine whether or not it was either "official misconduct" or the unfaithful performance of an "official duty."

The duties of a notary public are defined by statute (Gov. Code, § 8205) and include the taking of ". . . the acknowledgment or proof of powers of attorney, mortgages, deeds, grants, transfers, and other instruments of writing executed by any person, and to give a certificate of such proof or acknowledgment, endorsed on or attached to the instrument. Such certificate shall be signed by him in his own handwriting. . . ." (Gov. Code, § 8205, subd. (b).) It is clear, then, that Dowdy's act of signing the fictitious firm name certificate, while wrongful and false, was in no way connected with his duties as a notary. If he had done nothing else, the Casualty Company could not conceivably be held on the bond. However, Dowdy additionally made a certificate of acknowledgment. ■ It is clear that both the notary and his sureties are liable for "official misconduct" for making a false certificate of acknowledgment (*Joost* v. *Craig*, 131 Cal. 504, 508 [63

P. 840, 82 Am.St.Rep. 374]; *Hemet Home Builders Assn.* v. *Wells,* 3 Cal.App.2d 65, 79-80 [39 P.2d 233]). It is obvious also that a notary cannot avoid such liability by the subterfuge of signing the jurat with a fictitious name. The name under which an act is committed is not controlling; rather, it is the person who commits the act that incurs the liability. *Nihil facit error nominis cum de corpore constat.* (*Anderson* v. *De Urioste,* 96 Cal. 404, 407 [31 P. 266]; *Cf. People* v. *Ryan,* 74 Cal.App. 125, 128 [239 P. 419].)

If Dowdy had executed the jurat in his own name, instead of in the fictitious name "M. L. Johnson," he would have taken his own acknowledgment. It is without question that a notary public cannot act in any matter in which he has a financial or beneficial interest. (*Bank of Woodland* v. *Oberhaus,* 125 Cal. 320, 324 [57 P. 1070]; see also 1 Cal. Jur.2d, Acknowledgments, § 22 et seq.) Thus, for a notary to acknowledge his own signature would clearly be "official misconduct" within the statutory enactment (Gov. Code, § 8214). And the notary here cannot escape the impact of liability for this misfeasance of his official duties by signing the jurat with a fictitious name.

Additionally, Dowdy used his official office to commit another false act, the use itself of the fictitious name "M. L. Johnson" on the jurat. He also utilized his knowledge of notarial procedures and his official seal to commit the fraud. Since the seal of a notary is the subject of judicial notice by the court (Code Civ. Proc., § 1875, subd. 8), it follows that any use thereof by a notary is an official act and the wrongful use of the seal is "official misconduct."

The Casualty Company correctly contends that even though the notary's conduct be construed as official misconduct, that misconduct must be the proximate though not the sole and only cause of the loss. (*Inglewood Park M. Co.* v. *Ferguson,* 9 Cal.App.2d 217, 219 [48 P.2d 305]; *Jordan* v. *O'Connor,* 99 Cal.App.2d 632, 642 [222 P.2d 322].) And it is clear that where the action is founded upon the negligence or misfeasance of the notary, the intervening negligence of the plaintiff is a bar to recovery. (*Burck* v. *Buchen,* 46 Cal.App.2d 741, 746-747 [116 P.2d 958].) The insurer thus contends that the plaintiff's intervening negligence and the notary's other wrongful acts interrupted the natural and continuous sequence of events which are necessary to establish proximate cause. The contentions are without merit.

First, it is argued that the plaintiff was under a duty

to take precautions to determine whether or not Civil Code, sections 2466 and 2468, which require the publication and filing with the clerk of the county all certificates of fictitious firm names, were complied with. However, there is nothing in the transcript of the proceedings nor in the findings of the court which would support even an implied finding that such an examination of the county records would have revealed the facts that the certificate was false. Matter not in the record or findings cannot be considered by an appellate court on suggestion of counsel in the briefs (*Altman* v. *Poole,* 151 Cal.App.2d 589, 593 [312 P.2d 6]; *People* v. *Jaquish,* 170 Cal.App.2d 376, 378 [338 P.2d 974]). Moreover, the insurer has cited no authority and we can find none which indicates that the bank was under any duty to conduct such an investigation.

Finally, the casualty company contends that after opening the account with the plaintiff, Dowdy forged endorsements on checks abstracted from his employer and that these acts were the proximate cause of the loss. The company conceded that it was not essential that the notary's wrongful act be the sole and only cause of the loss; however, "it must be an efficient cause of the loss" (*Jordan* v. *O'Connor, supra,* 99 Cal.App.2d 632, 642). It is evident that the forging and cashing of the checks were natural and probable consequences following the notary's official misconduct. No other events could be more probable. The bank subjected itself to liability in justifiable reliance upon the authenticity of the certificate, as evidenced by the notarial seal and signature (*Inglewood Park M. Co.* v. *Ferguson, supra,* 9 Cal.App.2d 217, 219).

 As the court in *Burck* v. *Buchen, supra,* 46 Cal. App.2d 741 said at page 747: "This rule does not render it necessary that the misconduct or neglect of the notary be the *sole* proximate cause of loss. Indeed, an instrument cannot be used as a means of defrauding anyone until used in some transaction entirely outside the official duties of the notary. For this reason, the right of action is not dependent upon a showing that the acts of others have not contributed to the injury, or defeated by a showing that they have so contributed, if it appears that the party defrauded relied on the notary's certificate."

Thus, we conclude that Dowdy's actions in affixing a fictitious name to the certificate of acknowledgment, and in misusing the seal of his office, constituted official misconduct and

unfaithful performance of his duties as a notary, and, further, that these acts were a proximate cause of the loss sustained by the plaintiff.

The judgment is reversed.

Kincaid, J. pro tem.,* concurred.

ASHBURN, Acting P. J., Dissenting.—I am unable to concur. Though no precedent has been found which deals with the factual situation here presented, application of recognized legal principles leads, in my opinion, to affirmance of the judgment.

It must be borne in mind that judgment has been entered in plaintiff's favor against Dowdy and that the only question here presented is the liability of the surety upon his notarial bond.

The basic facts are that Dowdy signed his own name to a certificate of doing business under a fictitious firm name, declaring himself to be the owner of a business actually belonging to and conducted under the name of his employer. Standing alone this could not lay a basis for liability on the bond and the majority opinion so concedes. Next, Dowdy, who was a notary, completed a fictitious notarial certificate upon said firm name document using the name of M. L. Johnson as that of the certifying notary. Thus Dowdy appears in the transaction as signer of the firm name certificate but not as notary. His notarial seal was also affixed but it did not bear his name and hence was one which could belong to any notary.

The bondsman's obligation is *strictissimi juris* and is expressly conditioned upon the notary's faithful performance of "all official duties required of him by law." The pertinent statute, Government Code, section 8214, provides: "For the official misconduct or neglect of a notary public, he and the sureties on his official bond are liable to the persons injured thereby for all the damages sustained." It is automatically written into the bond and the phrases of the bond and the statute merge into a single meaning—official misconduct.

It is well established that any criminal, fraudulent or other dereliction of the notary cannot create liability of his surety unless it falls within the concept of "official misconduct." Section 8205, Government Code, defines the official duties of a notary. The pertinent portion of the statute (as it stood at the times of issuance of the bond and of Dowdy's forgery)

*Assigned by Chairman of Judicial Council.

is subparagraph (b), reading: "To take the acknowledgment or proof of powers of attorney, mortgages, deeds, grants, transfers, and other instruments of writing executed by any person, and to give a certificate of such proof or acknowledgement, endorsed on or attached to the instrument. Such certificate shall be signed by him in his own handwriting." Manifestly this does not include the taking of his own acknowledgement. (See *Lee* v. *Murphy*, 119 Cal. 364, 369 [51 P. 549, 955].)

Volume 36, California Jurisprudence 2d, section 9, page 410: "In common with other sureties, those of a notary are never held beyond the strict terms of their agreements. Thus, they are liable only for the acts of the notary when he acts in his official capacity, and are not liable for his wrongful acts as an attorney or agent, or for misconduct that is not official."

*Norton* v. *Title Guaranty & Surety Co.*, 176 Cal. 212, 215 [168 P. 16] : "The bond was collateral security for Dreischmeyer's *official* conduct, not for his general course of action as plaintiff's agent and legal adviser."

*Heidt* v. *Minor*, 89 Cal. 115, 117-118 [26 P. 627] : "The facts found establish beyond any question the civil and criminal liability of Cordell. But the liability of his sureties, the defendants, depends upon the terms and conditions of the bond which they executed. The sureties upon an official bond undertake for nothing, which is not within the letter of their contract. 'The obligation is *strictissimi juris,* and nothing is to be taken by construction against the obligors. They have consented to be bound to a certain extent only, and their liability must be found within the terms of that consent.' (Per Cooley, J., in *Detroit Savings Bank* v. *Ziegler*, 49 Mich. 157 [43 Am.Rep. 456].) That is a clear and concise statement of a rule universally accepted, but as might naturally be expected, courts have differed as to the delinquencies of the principal for which the sureties made themselves liable. . . . It is no part of the duty of a notary public to receive money from or for anybody. It was misconduct, but not *official* misconduct, to fraudulently obtain it. And it is only against his official misconduct that the sureties consented to indemnify persons injured thereby. He did not receive any money in his official capacity."

Volume 66, Corpus Juris Secundum, section 12, page 630: "The general rule as to liability has been said to be that, before a notary and his surety can be held, it is necessary to determine whether the act done or not done, committed or omitted, was or was not authorized by law, was or was not

incumbent on him, was or was not required of him, whether he was directed to do it, whether he has failed to discharge the duty, and whether injury has been sustained. . . . The obligation of the sureties on the bond is to be strictly construed. The bond does not cover acts or omissions which are not a part of the notary's official duty, and in which he is merely the agent of the party employing him, or acts only in his individual and private capacity.''

It was not part of the right or duty of Dowdy to take his own acknowledgment and had he attempted or purported to do so his act would have been void. But he did no such thing. He forged an acknowledgment purporting to have been made by a notary named Johnson. He used a seal which did not bear any notary's name. In no sense did he act in performance of an official duty or under color of his office. The same forged acknowledgment, fortified by a blank seal, could have been made by anyone who never possessed a notary's commission, and it could have been equally effective in consummating the fraud.

Dowdy has suffered judgment against himself in the sum of $9,981.09. The sole question before us is whether his surety is also liable, and that turns upon the question of whether Dowdy's forgery and fraud were ''official misconduct'' or failure to faithfully perform ''official duties required of him by law.'' I think not. In my opinion the judgment should be affirmed.

Respondent's petition for a hearing by the Supreme Court was denied January 18, 1961.