[Civ. No. 39299. First Dist., Div. Three. Jan. 12, 1977.]

AUTO PROCUREMENT, INC., Cross-complainant and Respondent, v. WESTGATE CALIFORNIA INSURANCE COMPANY, Cross-defendant and Appellant.

---

**COUNSEL**

Montgomery, Bottum, Regal & McNally and Leonard S. Levy for Cross-defendant and Appellant.

Nubar Tashjian for Cross-complainant and Respondent.

---

**OPINION**

**DEVINE, J.***—A portion of section 4157 of the Vehicle Code must be interpreted for the first time on this appeal. That section reads as follows:

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

"In the absence of the regularly required supporting evidence of ownership upon application for registration or transfer of a vehicle, the department may accept an undertaking or bond which shall be conditioned to protect the department and all officers and employees thereof and any subsequent purchaser of the vehicle, any person acquiring a lien or security interest thereon, or the successor in interest of such purchaser or person against any loss or damage on account of any defect in or undisclosed claim upon the right, title, and interest of the applicant or other person in and to the vehicle." The question is whether the words "any subsequent purchaser" mean one who buys the vehicle following favorable action on registration and transfer by the Department of Motor Vehicles (DMV), or any person who buys the vehicle following the issuance of the undertaking or bond.

## THE FACTS

On January 26, 1973, Donna Neptune offered to sell a 1971 Chevrolet station wagon to respondent Auto Procurement, Inc. This establishment specialized in purchases of out-of-state cars, having found them highly profitable, and its advertisements were directed toward such purchases. Mrs. Neptune produced a registration card from Alabama, but the owner of Auto Procurement, Mr. O'Donnell, found this insufficient to protect him as a dealer. Mrs. Neptune told him that she had bought the vehicle from a private party, the bill of sale had been lost, and that the private party was not available for execution of another bill of sale. (A bill of sale written on scratch paper was produced at the DMV. It was dated Jan. 10, 1973, from a William Messer of Mobile, Alabama.) Mr. O'Donnell brought the vehicle to the department which checked the vehicle identification number physically with the registration certificate. Mr. O'Donnell then telephoned to Alabama and ascertained that the registration was in order and examined papers which convinced him that Mrs. Neptune was who she said she was. This was the extent of his investigation.

On the same day, Mr. O'Donnell and Mrs. Neptune visited a broker who accepted a premium for a foreign vehicle ownership bond. A premium of $53.40 was paid. The bond was applied for because of demand by the department under section 4307 of the Vehicle Code which reads as follows: "In the event application is made in this State for registration of a vehicle and the department is not satisfied as to the ownership of the vehicle or the existence of foreign liens thereon, then the department may register the vehicle and issue a registration card of a

distinctive color and license plates but shall withhold issuance of a California certificate of ownership unless the applicant shall present documents as to reasonably satisfy the department of the applicant's ownership of the vehicle and as to any liens thereon or post a bond pursuant to Section 4157."

Auto Procurement completed purchase of the vehicle that same day for $1,000 without change of registration. The bond was issued by appellant insurance company on January 29, 1973.[1] It shows on its face that it was issued under section 146.1 of the Vehicle Code, which had been repealed in 1959. Since 1959, section 4157 has contained the relevant provisions for undertakings. On February 2, 1973, Auto Procurement sold the vehicle to Asahi Trading Company for $2,295. On February 9, 1973, Mr. O'Donnell handed to the department Mrs. Neptune's bill of sale to Auto Procurement, the bond, a certificate of air pollution compliance, the Alabama license plate and a report of sale to Asahi, as permitted under section 4307. But registration was never issued because during the processing of the application, it was found by the national crime computer that the vehicle had been stolen from its owner in Massachusetts on December 31, 1972.

The first evidence that the vehicle was stolen was received by the department on March 19, 1973, and shortly thereafter, it became conclusive that the car indeed had been stolen. Auto Procurement was sued for conversion by a subrogee of the true owner of the vehicle. Judgment was awarded against Auto Procurement for the sum of $2,295, but by the judgment Auto Procurement was awarded title. In order to get return of the vehicle from Asahi, Auto Procurement paid $1,300. Auto Procurement seeks recovery from the surety.

### The Law

The trial judge came to the conclusion that the foreign vehicle surety bond purchased by Auto Procurement is applicable to the specific facts of the case. We have come to the opposite conclusion. ■ It is our holding that section 4157 in its reference to protecting *subsequent* purchasers means those persons who buy a vehicle following registration or transfer of the vehicle by the DMV. The section does not, under our interpretation, cover purchasers during the application for registration or transfer during the processing of application by making the bond

---

[1]Although there was not a specific finding, the trial court regarded the transaction at the broker's office as creating a "binder," and considered January 26, 1973, as the effective date of the bond.

binding as to them. Our reasons are: (1) There would be no need for the word "subsequent" if the bond were intended to protect anyone who applied for registration. The term "any purchaser of the vehicle" would suffice if that were the meaning. (2) A reader of the statute is impressed by the sequence of its terms that the department and its officers and employees are to be protected, and so are the persons who rely upon the acts of those officers and employees. To be sure, it was held in *Hirsch* v. *Department of Motor Vehicles* (1974) 42 Cal.App.3d 252 [115 Cal.Rptr. 452], that sections 818.4 and 821.2 of the Government Code have immunized the department and its employees from liability for issuance of any certificate. This decision does not change the meaning of section 4157 of the Vehicle Code. (42 Cal.App.3d at p. 258.) (3) Under the provisions of section 4157, the department *may* require the bond. Obviously the discretion of the department would be exercised in requiring the bond for the protection of those who later would rely on the department's action in effecting registration or transfer, and not for those who had chosen to complete a purchase before the department acted. (4) Section 4308 of the Vehicle Code provided that, if the department refuses to grant registration of a vehicle previously registered in another state, the department shall immediately return to the applicant all documents submitted with the application. This shows that the protection afforded by the bond is intended for those who rely upon registration or transfer because, if it were intended to apply to those who purchased during the investigation, the bond should not be returned but kept for the advantage of the losing purchaser.[2]

Although, as respondent points out, nowhere on the face of the bond does it appear that registration or a certificate of title must issue before the bond is deemed effective, the fact that the bond was issued in order to fulfill the requirement of a specific statute causes the surety's obligation to be *strictissimi juris*. (*Krebs* v. *Travelers Indem. Co.* (1961) 192 Cal.App.2d 83 [13 Cal.Rptr. 352]; *Morro Palisades Co.* v. *Hartford Accident & Indemnity Co.* (1959) 52 Cal.2d 397 [340 P.2d 628]; *Goggin* v. *Reliance Ins. Co.* (1962) 200 Cal.App.2d 361 [19 Cal.Rptr. 446]; *Bank of America* v. *Dowdy* (1960) 186 Cal.App.2d 690 [9 Cal.Rptr. 779].)

Something was made at the trial of the fact that a dealer in out-of-state cars is put to considerable disadvantage if he must wait before completing a purchase until the department has finished its investigation, which, as in the present case, may be several weeks later. But the terms

---

[2]Actually the bond was not returned but this was because the department had no means of finding the principal, Mrs. Neptune.

of the statute, as we read them, do not permit us to deduce that the Legislature was concerned about facilitating transfer, whether for the benefit of dealers or of sellers of vehicles who find themselves in need of ready cash, rather than about the protection of buyers from the consequences of sales which prove to be illegitimate however innocent the dealer may be.[3]

Respondent argues that actually it was a subsequent purchaser, in any event, by reason of its later transaction in recovering the vehicle from Asahi. This transaction seems not to have been a purchase because title was gained by Auto Procurement by the judgment in the conversion action; it was a settlement with Asahi. Anyway, it was not the kind of transaction which the statute is designed to protect because the "purchaser" was fully cognizant of the original defect in its title and that of Asahi.

The judgment is reversed.

Draper, P. J., and Scott, J., concurred.

---

[3]This was the first instance of claim against a bond arising from Auto Procurement's 17 years of experience with foreign vehicle bonds.