Filed 10/18/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| IMMIGRANT RIGHTS DEFENSE COUNCIL, LLC, | B313878 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No.19STCV45290) |
| v. | |
| HUDSON INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Judge William F. Highberger.  Affirmed.

Medvei Law Group and Sebastian M. Medvei for Plaintiff and Appellant.

Humphrey, Berger & Associates, Clark H. Cameron and Kenneth S. Humphrey for Defendant and Respondent.

_____

The Immigration Consultant Act (ICA) (Bus. & Prof. Code, § 22440 et seq.), specifically, Business and Professions Code section 22443.1[1] requires an immigration consultant to procure and file a bond in the amount of $100,000. Any person who suffers damages by reason of the immigration consultant's fraud, misrepresentation, or failure to provide services has a right of action against the consultant and the surety on the ICA bond. (§§ 22443.1, 22446.5, 22447.)

Appellant Immigrant Rights Defense Council, LLC (IRDC or appellant) is a self-described "watchdog association" that brings actions for injunctive relief against immigration consultants under section 22446.5. Under subdivision (b) of that section, any person who believes an ICA violation has been committed may bring a civil action "on behalf of the general public" seeking solely injunctive relief. In October of 2017, appellant brought over 90 such actions against immigration consultants, two of whom had bonds issued by respondent Hudson Insurance Company (respondent or "Hudson").

After appellant prevailed in its suit against the two Hudson-bonded consultants, appellant filed suit against respondent to recover its attorney fees and costs against the ICA bond. The trial court granted summary judgment in favor of Hudson, concluding that appellant was not entitled to recover these litigation costs against an ICA bond.

On appeal, appellant contends the trial court committed legal error, citing general principles of surety law which provide that a surety's liability is typically commensurate with the liability of its bond principal. However, as explained in our opinion, a surety issuing a statutory bond is liable only to the extent indicated in the code section under which the surety executes the

_____

[1] Statutory references are to the Business and Professions Code unless otherwise specified.

bond. Under the plain language of the relevant bond statutes, a non-aggrieved person who suffers no damages is not entitled to recovery from an ICA bond. Because appellant does not fall within the class of persons who may recover against an ICA bond, the trial court properly granted summary judgment in favor of respondent. We therefore affirm the trial court's judgment.

## BACKGROUND

I. *The ICA*

The ICA makes it "unlawful for any person, for compensation, other than persons authorized to practice law . . . to engage in the business or act in the capacity of an immigration consultant within this state except as provided in this chapter." (§ 22440.) An immigration consultant can assist with certain immigration paperwork (§ 22441) but must first pass a background check and submit fingerprints to the Department of Justice (§§ 22441.1, 22442.4).

In addition to limiting the services that can be provided by immigration consultants, the ICA contains various consumer protection regulations pertaining to advertising, bonding, and the manner in which immigration consultants can conduct their business. (See, e.g., §§ 22442 [requiring a written contract containing certain terms to be provided to each and every customer of an immigration consultant]; 22442.1 [requiring signed receipts for payments made by clients]; 22442.2, subd. (c)(1) [requiring that every advertisement of an immigration consultant clearly and conspicuously state that the immigration consultant is not an attorney]; 22443.1 [requiring that immigration consultant secure a $100,000 surety bond before engaging in the business].)

Section 22446.5, sets forth three classes of plaintiffs who may pursue actions against immigration consultants who violate the ICA: (1) "A person claiming to be aggrieved by a violation of this chapter by an immigration consultant may bring a civil action for injunctive relief or damages, or both" (subd. (a)); (2) "Any other party who, upon information and belief, claims a violation of this chapter has been committed by an immigration consultant may bring a civil action for injunctive relief on behalf of the general public" (subd. (b)); and (3) "The Attorney General, a district attorney, or a city attorney who claims a violation of this chapter has been committed by an immigration consultant, may bring a civil action for injunctive relief, restitution, and other equitable relief against the immigration consultant in the name of the people of the State of California" (subd. (c)).

The first two categories of plaintiffs who prevail in their actions are entitled to "reasonable attorneys' fees and costs." (§ 22446.5.)[2]

Appellant, the IRDC, is a non-governmental organization ("watchdog association") that brings actions under the ICA solely for injunctive relief. Appellant's objective is to "shut down illegally operated immigration consultant businesses in California."

---

[2] Section 22445 also allows an action for civil penalties to be brought by: (1) "any person injured by the violation" or (2) "the Attorney General, a district attorney, or a city attorney." (§ 22445, subd. (a)(1).) The maximum penalty for each violation is $100,000. (*Ibid.*) Section 22445 does not allow a non-injured member of the general public to pursue civil penalties under the statute.

4

II.  *The Underlying Lawsuits Filed by Appellant Against Immigration Consultants*[3]

Between October 6 and October 20, 2017, appellant, acting as a private attorney general,[4] filed more than 90 lawsuits in Los Angeles County pursuant to section 22446.5, naming different immigration consultants as defendants.  Two of the consultants sued by appellant had ICA bonds issued by respondent:  John J. Lee [dba Union Trans. and Prof. Services] and Jonathan Licup [dba JS Connections Tax and Legal Services].  The pleadings against both defendants reflect that each unverified complaint was nearly identical, alleging the same list of 20 ICA violations believed to have been committed by each defendant.

Lee represented himself in pro. per. against the lawsuit and appellant ultimately obtained a default judgment against Lee wherein Lee is permanently enjoined from engaging in the business of an immigration consultant.  The court awarded statutory attorney fees and court costs in favor of appellant and against Lee in the amount of $7,170.00.

---

[3]  We base much of our factual and procedural summary on the complaint, undisputed portions of the parties' briefing and the trial court's statement of decision.  (See *Western Bagel Co., Inc. v. Superior Court* (2021) 66 Cal.App.5th 649, 655, fn. 2; *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2; see also *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 ["'[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.  [Citations.]'"].)

[4]  "Private attorney general" is an informal term for a litigant empowered to sue to vindicate public interests not directly connected to any special stake of his or her own.  (*See County of Inyo v. City of Los Angeles* (1978) 78 Cal.App.3d 82, 88, fn. 1.)

Consultant Licup, represented by counsel, defended against the lawsuit for approximately one year. Ultimately, appellant and Licup entered into a stipulation for entry of final judgment. In that judgment, Licup agreed to be permanently enjoined from engaging in the business of an immigration consultant, but admitted to no wrongdoing. On motion, the court awarded statutory attorney fees and court costs in favor of appellant and against Licup in the amount of $17,167.65.

Respondent was not named as a defendant in either lawsuit and was not made aware of those lawsuits until after appellant had secured its judgments against Lee and Licup.

III.    *Appellant's Complaint Against Respondent Hudson Insurance Co.*

On December 18, 2019, appellant filed its complaint for recovery from Hudson as the guarantor on the respective immigration bonds issued to Lee and Licup, seeking full recovery of its court awarded costs, including attorney fees. Appellant set forth one cause of action: payment by guarantor.

IV.    *The Cross-Motions for Summary Judgment*

Appellant's motion for summary judgment asserted that the judgments against Lee and Licup were prima facie evidence of their liability and that because Hudson had no evidence to rebut that prima facie showing, appellant was entitled to recover from the judgment debtors' immigration consultant bonds.

Hudson, on the other hand, argued that appellant could not recover from the immigration consultant bonds because the bonds were restricted to

6

providing compensation to persons who have suffered damages as a result of ICA violations.[5]

In the parties' cross-motions, the parties agreed on the material facts but presented conflicting interpretations of the ICA and the relevant bonds. Both parties presented prior unpublished opinions from other courts: appellant presented a federal district court opinion issued by a magistrate judge finding that another insurer, Hartford, was required to pay appellant's attorney fees and costs from the bond on another judgment for injunctive relief against an immigration consultant; respondent presented a Los Angeles superior court appellate division opinion finding in favor of Hartford in connection with a different judgment for injunctive relief against an immigration consultant.[6]

## V.    *Trial Court's Decision*

On May 6, 2021, the trial court issued a six-page, well-reasoned ruling in favor of respondent and against appellant on the competing summary

---

[5]    In addition, Hudson asserted misjoinder based on the failure to include the judgment debtors as defendants in the action and that IRDC was collaterally estopped from suing them, by virtue of an adverse outcome against appellant in a prior action against a different surety, Hartford Fire Insurance Company ("Hartford").

[6]    Although California Rules of Court, rule 8.1115 does not prohibit citation to unpublished federal cases (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18), it does, generally, prohibit citation to an unpublished opinion of a California Court of Appeal or superior court appellate division.  (Cal. Rules of Court, rule 8.1115(a).)  However, the trial court took judicial notice of both opinions in its written decision, noting that the latter citation was relevant to Hudson's collateral estoppel contention— notwithstanding the fact that the trial court did not need to reach this argument.  (Cal. Rules of Court, rule 8.1115(b)(1).)  The trial court stated it did not rely on the appellate division opinion in reaching its conclusion.

judgment motions.  In its ruling, the trial court found that in the case of statutory bonds, such as the ICA bonds at issue in this case, the surety's liability is limited to the express terms of the bond and any applicable statutes incorporated into the bond.  The court proceeded to find that under the plain language of these terms, "only certain species of conduct (e.g., fraud and nonperformance) that causes [*sic*] damages" qualify for bond recovery. Because appellant failed to show that "its recoveries against Lee and Licup were based on injurious conduct causing damages . . . rather than just regulatory violations," appellant had failed to show a triable issue on its claim.  Accordingly, respondent was entitled to summary judgment.

The trial court's ruling was subsequently reduced to a judgment in favor of respondent and against appellant on June 1, 2021. Appellant timely appealed.

## DISCUSSION

Appealing from the order granting summary judgment in favor of respondent, appellant contends that, contrary to the trial court's ruling, the relevant statutory provisions of the ICA do not preclude appellant's recovery against an ICA bond.  The trial court's order is subject to de novo review, because the relevant underlying facts are not in dispute and the issues before us are questions of statutory interpretation.  (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1081–1082 [reviewing appeal from summary judgment de novo where parties stipulated to relevant facts and issues before court were issues of statutory interpretation]; *City of Saratoga v. Hinz* (2004) 115 Cal.App.4th 1202, 1212 ["the interpretation of a statute and the application of that statute to undisputed facts . . . is subject to this court's independent or de novo review"];

see also *International Alliance of Theatrical Stage Employees, etc. v. Laughon* (2004) 118 Cal.App.4th 1380, 1387 [interpretation and application of statutes is a matter of independent review].)

I.      *Governing Legal Principles*
        A.  *Surety Law and Statutory Bonds*

"A surety is 'one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor.'  (Civ. Code, § 2787.)"  (*Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 38 (*Cates*).)  A surety bond refers to the written instrument executed by the principal and the surety.  (*Ibid*.)  In suretyship, the risk of loss remains with the principal, while the surety merely lends its credit so as to guarantee payment or performance in the event that the principal defaults.  (*Ibid*.; *Schmitt v. Insurance Co. of North America* (1991) 230 Cal.App.3d 245, 257.)  In the absence of default, the surety has no obligation.  (*Ibid*.)  As such, "a surety's posture as to an obligee on a performance bond is not necessarily one of 'indemnitor.'"  (*Cates, supra*, 21 Cal.4th at p. 47.)

A surety bond is interpreted by the same rules as other contracts, requiring an examination of the words used by the parties to uncover their intent.  (*Bank of America v. Dowdy* (1960) 186 Cal.App.2d 690, 693 (*Dowdy*); *Corby v. Gulf Ins. Co.* (2004) 114 Cal.App.4th 1371, 1375 (*Corby*).)  In addition, "[w]here a surety bond is given pursuant to the requirements of a particular statute, the statutory provisions are incorporated into the bond." (*Dowdy, supra*, 186 Cal.App.2d at p. 693; see also *Corby, supra,* 114 Cal.App.4th at p. 1375.)  In the latter situation, the task of interpretation is predominantly one of statutory interpretation—which, of course, also includes giving effect to the ordinary meaning of the words used.  (*Corby,*

*supra*, 114 Cal.App.4th at pp. 1375–1377; see also *Pierce v. Western Surety Co.* (2012) 207 Cal.App.4th 83, 90 (*Pierce*) ["The liability of a surety on a bond issued in conformity with [statutory provisions] is determined from the express terms of the bond read in light of those statutes. The statutory provisions are incorporated into the bond"]; *Brown v. Surety Co. of Pacific* (1981) 122 Cal.App.3d 614, 620 [finding that surety's liability under a contractor's license bond was established by statute, and observing that no burden could be imposed on the surety other than those specifically set forth by statute].)

### B. *Relevant Statutes under the ICA*

Section 22443.1, states that "[p]rior to engaging in the business, or acting in the capacity, of an immigration consultant, each person shall file with the Secretary of State a bond of one hundred thousand dollars ($100,000) executed by a corporate surety admitted to do business in this state and conditioned upon compliance with this chapter." (Section 22443.1, subd. (a)(1).)

Subdivision (b) of that section provides that "[t]he bond required by this section shall be in favor of, and payable to, the people of the State of California *and shall be for the benefit of any person damaged by* any fraud, misstatement, misrepresentation, unlawful act or omission, or failure to provide the services of the immigration consultant or the agents, representatives, or employees of the immigration consultant, while acting within the scope of that employment or agency." (§ 22443.1, subd. (b), italics added.)

Consistent with section 22443.1, section 22447 provides that "[a] person *who is awarded damages* in an action or proceeding for injuries caused by the

10

acts of a person engaged in the business of, or acting in the capacity of, an immigration consultant, in the performance of his or her duties as an immigration consultant, may recover damages from the bond required by Section 22443.1." (Italics added.) Section 22447 further states that "[i]n an action brought by the Attorney General, a district attorney, or a city attorney, the court may order relief for benefit *of the injured parties* to be paid from the bond." (§ 22447, subd. (a), italics added.)

II. *Appellant Does Not Fall Within the Class of Persons Who May Recover Against an ICA Bond*

A. *Each Bond's Coverage is Coterminous with the Bond Statutes Under Which it Was Issued*

The bonds—i.e., written instruments—executed between Hudson, Licup and Lee are titled "Surety Bond Immigration Consultants" followed by a citation to "Business and Professions Code section 22443.1" directly beneath that title. Each bond then states in its preamble that "whereas" section 22443.1 requires the principal to have on file with the secretary a bond in the amount of $100,000, "this bond is executed and tendered *in accordance therewith.*" (Italics added.) Each bond further states that "the conditions of the foregoing obligations are that if the Principal complies with the provisions of Chapter 19.5 (commencing with Section 22440), of Division 8 of the Business and Professions Code of the State of California . . . and pays all damages occasioned to any person by unlawful acts or omissions of the Principal mentioned above, or of its agents or employees while acting within the scope of their employment, then this obligation is to be void; otherwise it is to remain in full force and effect." Accordingly, the bond's coverage with regard to each principal is coterminous with the bond statutes. (See *Milliron*

11

*v. Dittman* (1919) 180 Cal. 443, 445–446 (bonds issued in pursuance of a governmental law or a public purpose effectively contain the provisions of the relevant law as their terms unless "necessarily and absolutely inconsistent with the unequivocal intent of the parties as disclosed by the express terms of the bond itself"].)[7]

B.      *The Plain Language of the Bond Statutes Precludes Appellant's Recovery of its Litigation Costs*

In reviewing the relevant statutory language, we conclude that the plain meaning of the words establishes that only plaintiffs actually aggrieved—i.e., those who suffer damages—may recover against the bond.

First, section 22443.1—the statute under which the bond was issued—expressly states that the bond "*shall be* for the benefit of any person *damaged* by any fraud." (Italics added.) Second, section 22447—the statute that identifies who may stake a claim against the bond—states that "[a] person who is *awarded damages in an action or proceeding for injuries . . . may recover damages from the bond required by Section 22443.1*." (Italics added.) By this language, the Legislature has consistently declared that the bond funds are designated for those who have been actually injured and suffered

_____

[7]      Appellant points out that the bonds executed by Hudson also state that each bond "shall remain in full force and effect for the term of the initial bond and all subsequent riders, *for all liabilities, acts, omissions, or causes arising after [the] bond becomes effective and before the cancellation or withdrawal of the Surety from the bond*" and cites this language as indicating that "the immigration consultant bond terms do not make recovery contingent on a showing of injury." (Italics added.)

However, as pointed out by the trial court, this language "does not define the substantive scope of the bond's coverage" but simply "describes its temporal coverage." In light of the bond language cited above—and the parallel language of the relevant bond statutes, discussed further *post*—we agree.

12

damages from ICA violations committed by an immigration consultant. (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998 ["'It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed'"]; see also *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 ["'If the language is clear and unambiguous there is no need for [statutory] construction, nor is it necessary to resort to indicia of the intent of the Legislature'"].)

We further point out that these bond statutes were enacted several years *after* the Legislature enacted 22446.5—which permits actions for both injunctive relief and damages. As such, the Legislature was well aware that these separate and distinct types of relief involving ICA violations were available.[8] (*Mendoza v. Ruesga* (2008) 169 Cal.App.4th 270, 285 [observing that "[t]he ICA does not intertwine equitable relief with the assessment of damages" and that "each type of relief is separately authorized"].) Nevertheless, the Legislature chose to confine claims against the statutory bond fund to those who have been "awarded damages." The sole exception to the "*awarded*" limitation lies in section 22447, which states: "In an action

---

[8]      Section 22446.5, addressing who may file suit against in ICA consultant was enacted in 1987. The original version did not include subdivision (c), which permits a civil action brought by an Attorney general, district attorney, or city attorney; that provision was added in 1994. (§ 22446.5, added by Stats. 1987, ch. 484, § 3, eff. Sept. 9, 1987; amended by Stats. 1994, ch. 561 (A.B. 2520), § 5; Stats. 2002, ch. 705 (A.B. 1999), § 2.)

Sections 22443.1 and 22447—addressing who may recover against an ICA bond—were added in 1994. The provisions therein addressing who may recover against the bond have not undergone any substantive changes. (See § 22447, added by Stats. 1994, ch. 562 (A.B. 3137), § 3; amended by Stats. 1997, ch. 790 (S.B. 1348), § 14; Stats. 2001, ch. 304 (S.B. 1194), § 4; Stats. 2002, ch. 705 (A.B. 1999), § 3; § 22446.5, added by Stats. 1987, ch. 484, § 3, eff. Sept. 9, 1987, amended by Stats. 1994, ch. 561 (A.B. 2520), § 5; Stats. 2002, ch. 705 (A.B. 1999), § 2.)

brought by the Attorney General, a district attorney, or a city attorney, the court *may order relief for benefit of the injured parties to be paid from the bond.*" (§ 22447, subd. (a), italics added.) Since these governmental agencies are only permitted to bring suits for equitable relief under section 22446.5—but such suits expressly include claims for "restitution," (*ibid.*)—this provision is consistent with those discussed above in that it reflects an intent to disburse the funds of the statutory bond to those who have suffered actual injury.

Our plain reading of the statutory language is also consistent with the ICA's purpose. (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340 [courts will not follow plain meaning of statute "when to do so would 'frustrate[] the manifest purposes of the legislation as a whole or [lead] to absurd results'"].) That is, "[t]he Legislature enacted the ICA in 1986 [citation] in response to the federal Immigration Reform and Control Act of 1986, which created opportunities for undocumented immigrants to seek amnesty, but also created opportunities for unscrupulous persons to prey on them." (*Mendoza v. Ruesga, supra,* 169 Cal.App.4th at p. 281.) "'*Immigrants are particularly vulnerable to fraud* because of a combination of *their tenuous status in this country and their lack of knowledge about their legal rights.*'" (*Id.* at p. 281, italics added.) "The Legislature has amended the ICA several times to expand *consumer protection to immigrants*, whether documented or undocumented" and "has imposed no obligations on them or limitations *on their* recovery." (*Id.* at pp. 282–283, italics added.)

In short, the class of people the ICA is designed to protect is the population most vulnerable to fraud and deceit by unscrupulous consultants—their customers. The Legislature's decision to limit the ICA

14

bond funds to victim compensation is therefore consistent with the ICA's purpose in protecting—and making whole—the vulnerable population it was designed to protect.[9]  Similar acts have done the same.

For example in *Middelsteadt v. Karpe* (1975) 52 Cal.App.3d 297, the court was called upon to resolve the question whether a prevailing plaintiff in a dispute between a real estate broker and a salesperson over the division of commissions earned by the salesperson could seek compensation from the Real Estate Recovery Fund, which allows "an aggrieved person" to seek recovery upon a judgment that has remained unsatisfied.  (*Id.* at pp. 301–302.)  In concluding in the negative, the court pointed out that "the protected class under the act is not the real estate licensees but *the clients*" and explained that "the Recovery Fund, which provides a limited amount for the protection of the public, may not be resorted to by the real estate licensees themselves who are in a better position to guard against the deceitful and fraudulent acts of their colleagues and who therefore fall outside the class protected by the statute." (*Id.* at p. 302, italics added.)  The court further observed that its conclusion was consistent with cases from jurisdictions in which a real estate broker is required to post a surety bond as part of his or her license application, stating that "[*i*]*t requires no strenuous effort to see that the statutory bond, which affords a limited amount of recovery from an independent source in case the real estate licensee commits some wrongdoing*

---

[9]     We further note that in 2013, the Legislature increased the bond amount from $50,000 to $100,000.  In that same piece of legislation, the Legislature also added provisions that require an immigration consultant to establish a client trust account and to deposit in this account any funds received from the client prior to performing immigration reform act services for that client and imposed certain requirements relating to the expenditure of funds from this trust account.  (Stats. 2013, ch. 574, § 8 (AB 1159), effective Oct. 5, 2013, operative July 1, 2014.)

*and defaults, serves the very same purpose as the Recovery Fund in California*" and that both funds were for the benefit of the people the legislation was designed to protect—i.e., the clients. (*Id.* at p. 304, italics added.)

The same principle holds true here and appellant—a self-described "watchdog association . . . conceptualized by an *experienced immigration attorney*"—does not fall within the class of persons the ICA was designed to protect. (Italics added.)

### C. *Appellant's Reliance on Pierce, supra, is Misplaced*

Appellant cites no case law holding that a litigant who was neither injured nor awarded damages is nevertheless entitled to attorney fees and costs from a statutory bond fund. Instead, appellant leans heavily on *Pierce, supra,* 207 Cal.App.4th 83. However, as explained below, that reliance is misplaced.

In *Pierce*, the plaintiff, Trenton Pierce, purchased an automobile from an auto dealer who, pursuant to Vehicle Code section 11710, obtained a surety bond that was conditioned on the premise "'that the applicant shall not practice any fraud or make any fraudulent representation which will cause a monetary loss to a purchaser.'" (*Pierce*, at p. 88, quoting Veh. Code, § 11710, subd. (a).) Under Vehicle Code section 11711, "any person who suffer[ed] 'any loss or damage by reason of any fraud practiced on him or fraudulent representations made to him by a licensed dealer . . . [has] a right of action against such dealer . . . and the surety upon the dealer's bond, in an amount not to exceed the value of the vehicle purchased from . . . the dealer.'" (*Ibid.*, quoting Veh. Code, § 11711, subd. (a).)

Several years later, Pierce sued both the autodealer and the surety on the bond for, inter alia, fraudulent misrepresentation under the Consumers Legal Remedies Act (CLRA).  (*Pierce, supra*, 207 Cal.App.4th at p. 87.)  After the dealer went out of business, and plaintiff obtained a default judgment against it, the plaintiff attempted to settle his claim with the surety through multiple offers.  After the surety settled the issue of the balance owed on Pierce's trade-in vehicle with the lender, Pierce served a Code of Civil Procedure section 998 offer to compromise for $10,000, excluding attorney fees and costs, on the surety.  The surety accepted this offer.  On Pierce's motion, the trial court awarded attorney fees to Pierce in an amount not to exceed the remaining balance on the bond, noting, inter alia, that the original sales contract had included an attorney fees clause.  (*Id.* at pp. 87–88.)

On appeal, the court agreed that attorney fees were warranted, but for different reasons.  First, the court noted that Pierce did not sue under the contract, but under various consumer protection statutes for fraud.  (*Pierce, supra*, 207 Cal.App.4th at p. 87.)  Moreover, the bond "did not secure against breach of the underlying contract."  (*Id.* at p. 90.)  As such, Pierce was not entitled to attorney fees based on the underlying contract.  (*Id.* at p. 90.)  However, the court found that the bond *did* secure against fraudulent conduct, observing that the statute under which the bond was issued "provided coverage for any monetary loss incurred by a purchaser . . . as a result of [the dealer's] fraud or fraudulent representations."  (*Ibid.*)  As such, the dealer's fraudulent conduct (pled as a violation of the CLRA) fell within the conduct secured by the statutory bond.  (*Id.* at p. 92.)  In so stating, the court noted that the CLRA was designed to protect consumers "'against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.'"  (*Id.* at p. 91.)  The court

17

further observed that the CLRA allows a prevailing plaintiff who has suffered damage as a result of the deceptive business practices to recover his or her attorney fees. (*Ibid.*) And while the bond statute itself was silent on the issue of attorney fees,[10] the court concluded that such fees were recoverable in the case before it because (1) Pierce was a prevailing plaintiff who was damaged by conduct identified in the express terms of the bond (*id.* at pp. 91–92), and (2) awarding Pierce his attorney fees was consistent with the general principle that a surety's liability is commensurate with that of the principal—absent any express limitation found in the statute or bond itself.[11] (*Id.* at p. 92.)

Even if we were to embrace the reasoning contained within *Pierce*, appellant would not prevail in this case. This is because, unlike the plaintiff in *Pierce*, appellant has failed to satisfy the prefatory conditions of the bond—i.e., that it was a plaintiff that *suffered damages* from the prohibited conduct

---

[10]     The court found insignificant the fact that a previous effort to amend section 11711 to make attorney fees recoverable was unsuccessful. (*Pierce, supra*, 207 Cal.App.4th at p. 92.)

[11]     Throughout its briefs, appellant cites Civil Code Section 2808, which provides: "Where one assumes liability as surety upon a conditional obligation, his liability is commensurate with that of the principal, and he is not entitled to notice of the default of the principal, unless he is unable, by the exercise of reasonable diligence, to acquire information of such default, and the creditor has actual notice thereof." (Civ. Code, § 2808.)

However, this section merely provides that separate notice to the surety of the principal's default is typically not necessary because the liability of the surety is generally "commensurate" with that of the principal. This general statement does not displace the well-established caselaw (dating back over a century) holding that the liability of a surety upon a statutory bond—like a contract—must be found with the terms of the bond and the statutory provisions incorporated into the bond. (See, e.g., *Milliron v. Dittman, supra,* 180 Cal. at pp. 445–446.)

at issue. To the extent appellant points out that *Pierce* focused on the underlying "conduct" protected by the bond—as opposed to the damages suffered by the plaintiff—this is neither significant nor dispositive. *Pierce's* damages were already established and are a non-issue in the case. Moreover, a plain reading of the two bond statutes in *Pierce* reflects that the bond funds were for "monetary loss" or "damage" caused by the fraudulent conduct of the covered dealer. (*Id.* at p. 88.) Appellant is not similarly situated to the plaintiff in *Pierce*.

We also find unpersuasive the decision issued by the federal district court in favor of appellant against another surety.[12] (*Immigrant Rights Def. Council, LLC v. Hartford Fire Ins. Co.* (C.D. Cal. Oct. 5, 2017; No. CV 17-1710-PLA) 2017 U.S. Dist. LEXIS 190732.) In finding in favor of appellant, the magistrate judge focused on the surety's contention that the ICA bond statute itself is silent on an award of attorney fees. The magistrate judge noted that under the surety's position, "not even an individual damaged by an immigration consultant's prohibited conduct, is permitted to recover fees and costs under the bond." The magistrate judge found such an interpretation inconsistent with the "statutory scheme of the ICA as a whole." (*Id.* at p.*15.)

However, as we explained above, under the *Pierce* holding an injured plaintiff could argue that he or she is entitled to attorney fees and costs from the bond (having met the prefatory requirements of the bond statutes) as part and parcel of their award for damages. (See *Pierce*,

---

[12]     Although appellant does not renew its reliance on the federal district court decision in this appeal, we address the court's reasoning in the interest of completeness.

19

*supra*, 207 Cal.App.4th at pp. 91–92.) Yet, appellant—who suffered no such damages—could not make such a claim.

To conclude that appellant was nonetheless entitled to recover attorney fees from the bond, the magistrate judge relied on the general rule that a surety's liability is commensurate with that of its principal, and also observed that the bond statutes do not expressly prohibit an award of attorney fees and costs.[13] (*Immigrant Rights Def. Council, LLC v. Hartford Fire Ins. Co., supra*, at p. *20.) However, this reasoning misses the mark. The general rule that a surety's liability is commensurate with that of its principal is qualified by the requirement that the bond instrument—and statutory terms incorporated into it—must allow for such recovery. Moreover, while the bond statutes do not expressly prohibit an award of attorney fees, the Legislature chose to expressly limit recovery from the bond funds to persons who have suffered damages. Under the statutory principal of inclusio unius est exclusio alterius ("'the inclusion of one is the exclusion of the other'") it was not necessary for the Legislature to also state that "those who have suffered no injury" (or "those who have not been awarded damages") may not recover from the bond. (See *United States v. Fleet* (11th Cir. 2007) 498 F.3d 1225, 1228; *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 585 [discussing

---

[13] The magistrate judge also cited case law noting the importance of awarding attorney fees to those who privately initiate lawsuits to effectuate important public policies embodied within statutory or constitutional provisions. (*Id*. at pp. *18–19.) However, the magistrate judge cited no case law for the proposition that such attorney fees may *also* be pursued against a statutory bond fund absent an aggrieved or injured plaintiff.

principle of statutory construction that the inclusion of one term excludes another].)[14]

## DISPOSITION

The grant of summary judgment in favor of respondent is affirmed. Respondent shall recover its costs on appeal.

### CERTIFIED FOR PUBLICATION IN THE OFFICIAL REPORTS

WILLHITE, Acting P. J.

We concur:

COLLINS, J.

CURREY, J.

---

[14]  We summarily reject appellant's alternative contention that, as a member of the general public, it is "irreparably harmed" by any violation committed by an immigration consultant and therefore "as a matter of law" satisfies any "injury" requirement contained in the bond statutes.  Like the trial court, we find such a claim of harm too "ephemeral" to satisfy the plain meaning of the words "injury" or "damage"—let alone the additional language contained in section 22447 which limits recovery to those who have been "*awarded* damages." (§ 22447, italics added.)